FOUST et al., Appellants,

v.

MAGNUM RESTAURANTS, INC. et al., Appellees.

[Cite as *Foust v. Magnum Restaurants, Inc.* (1994), 97 Ohio App.3d 451.]

Court of Appeals of Ohio,
Franklin County.

No. 94APE02–187.

Decided Sept. 13, 1994.

*Harris, McClellan, Binau & Cox* and *Mark S. Coco,* for appellants.

*Vorys, Sater, Seymour & Pease, Ceda G. Ogada* and *James E. Arnold,* for appellees.

DESHLER, Judge.

This is an appeal by plaintiffs, Jonathan E. Foust and Pamela Foust, from a summary judgment entered by the Franklin County Court of Common Pleas in favor of defendants on plaintiffs' claim for intentional tort.

On December 2, 1992, plaintiffs filed a complaint against defendants, Magnum Restaurants, Inc. ("Magnum"), and Kevin Hastings, alleging that defendants had engaged in intentional, wanton and willful actions which resulted in injuries to plaintiff Jonathan E. Foust ("Foust"). More specifically, plaintiffs' complaint alleged that, on June 16, 1992, Foust, an employee of Magnum,[1] was removing hot grease from a deep fat fryer for disposal. The complaint alleged that Foust was carrying a five-gallon metal bucket that did not have a lid; that while he was carrying the bucket, which was filled with grease, the grease splashed on his face, causing him to drop the bucket on the floor, and that Foust then slipped and fell on the hot grease. The complaint averred that Foust suffered serious permanent injuries as a result of the accident, including burns to his face, ear, neck, shoulder, hand, leg and ankle. Plaintiffs' complaint alleged that defendants Magnum and Hastings knew that disposing of hot grease, in the manner that they instructed Foust, was a dangerous process and that harm to an employee was a substantial certainty if employees continued to dispose of it in this manner.

On October 20, 1993, defendants Magnum and Hastings filed a motion for summary judgment against plaintiffs.[2] Plaintiffs filed a memorandum contra defendants' motion for summary judgment on November 22, 1993.

---

1. The record indicates that Magnum Restaurant, Inc. is a Burger King restaurant franchise.

2. The record indicates that on May 10, 1993, Magnum filed a third-party complaint for declaratory judgment and breach of contract against Allstate Insurance Co. Allstate Insurance Co. subsequently filed a motion for summary judgment, which the trial court granted, thereby dismissing it as a party to this action.

By decision filed December 7, 1993, the trial court sustained defendants' motion for summary judgment. The decision of the trial court was journalized by judgment entry on January 28, 1994.

On appeal, plaintiffs assert one assignment of error for review:

"The Trial Court erred in granting Defendants–Appellees' Motion For Summary Judgment and dismissing this intentional tort action."

▆ Civ.R. 56(C) provides in part that summary judgment shall be granted only if the evidence presented shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Further, summary judgment shall not be rendered unless it appears from the evidence that "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence * * * construed most strongly in his favor." *Id.* In an action by an employee against his employer for an intentional tort, upon motion for summary judgment by the employer, "the plaintiff employee must set forth specific facts which show that there is a genuine issue of whether the employer had committed an intentional tort against his employee." *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph seven of the syllabus.

In *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus, the Ohio Supreme Court set forth the test to determine whether the actions of an employee constitute an intentional tort, holding that a plaintiff must establish the following:

" * * * (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. * * * " (Citation omitted.)

In paragraph two of the syllabus of *Fyffe*, the court further held that:

"To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by

the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certainty— is not intent. * * * " (Citation omitted.)

In the present case, the trial court, in granting summary judgment in favor of defendants, concluded that plaintiffs had failed to set forth evidence satisfying the second prong of the *Fyffe* test, *i.e.*, a showing of knowledge by the employer that there was a "substantial certainty" that the employee would be injured while disposing of the grease.

■ The evidence submitted to the trial court for the most part is not in dispute. According to Foust's deposition testimony, he began his employment with Magnum on August 28, 1990, and he was trained to dispose of grease from the fryer vats beginning in June 1991. The procedure involved removing the grease from the fryer and placing it into a five-gallon metal bucket, where it was then taken outside and disposed of in a container. The bucket had two handles on the sides. The evidence indicated that the bucket had a lid at the time it was purchased, but that the lid was apparently later misplaced.

Foust's training consisted of watching other employees perform the task. More specifically, Foust primarily learned how to dispose of the grease by observing two other employees, Wayne Littlefield and John Youngblood. Foust stated that there was protective clothing which could have been worn during the process. He indicated that gloves, a face mask, and an apron were available. According to Foust, Littlefield wore only gloves while he was performing the disposal procedure. Foust stated that Youngblood wore the gloves and mask while disposing of the grease and that he sometimes wore the apron. Youngblood stated in an affidavit submitted by plaintiffs that he wore gloves and an apron. Foust indicated that when he started cleaning the fryer, he used the gloves for maybe four months and then discontinued using them. Foust also stated that he did not use the face mask or apron. Plaintiffs submitted the affidavit of Amanda Stockdale, who stated that "generally, but not always, the employees would put on gloves and an apron."

Regarding the accident itself, Foust related that he was walking toward the back of the building with the bucket when a small amount of grease splashed in his face. He could not remember what caused the oil to splash in his face. Foust then attempted to set the bucket down but he slipped and the bucket flipped over sideways, causing the grease to spill out onto the floor. Foust then fell to the floor, coming into contact with the grease as it was spilling out of the bucket. Foust could not recall any other instances where employees were injured while disposing of the grease.

In support of their motion for summary judgment, defendants submitted the affidavit of Kevin Hastings, the operating manager and a shareholder of Magnum. Hastings' affidavit averred that before an employee begins disposing of grease at the restaurant, the employee is first trained by other employees experienced in the process. Hastings' affidavit further stated that protective clothing is always kept in the restaurant and available every night to employees. The clothing consists of heavy rubber boots, heavy rubber gloves, a heavy rubber full-length apron, and a clear full-face shield. The affidavit further averred that, "[p]rior to Foust's accident, the process of disposing of shortening has occurred every evening since the restaurant was first opened in 1986, literally thousands of times, without anyone suffering injury while doing it." Defendants also submitted, in support of their motion, plaintiffs' responses to interrogatories, in which Foust stated that, prior to the accident, he had performed the task at issue for a year and had removed and disposed of shortening approximately one hundred times.

Upon review of the record, we find no error in the trial court's determination that plaintiffs failed to provide sufficient evidence on the second prong of the *Fyffe* test, requiring the employee to show knowledge by his employer that harm to the employee would be a "substantial certainty." In the present case, it was undisputed that the procedure had been performed "thousands of times" without a prior accident. The evidence indicated that Foust himself had performed the procedure over one hundred times during the course of a year without incident. Evidence of prior accidents involving the procedure at issue is one factor to be considered under the *Fyffe* analysis. *Van Fossen, supra,* 36 Ohio St.3d at 118, 522 N.E.2d at 505–506. While such evidence, standing alone, may not be conclusive, it strongly suggests, as in the instant action, that injury from the procedure was not substantially certain to result from the manner in which the job was performed. See, *e.g., Wehri v. Countrymark, Inc.* (1992), 82 Ohio App.3d 535, 538, 612 N.E.2d 791, 793–794 (showing of no prior accidents evidencing a dangerous condition curtails plaintiff's intentional tort claim); *Gray v. Continental Alloy Steel Co.* (1990), 70 Ohio App.3d 425, 430, 591 N.E.2d 359, 362 (record devoid of any evidence that appellee had knowledge of any prior injuries); *Zink v. Owens–Corning Fiberglas Corp.* (1989), 65 Ohio App.3d 637, 643–644, 584 N.E.2d 1303, 1307–1308 (evidence showing lack of prior accidents negates daunting standard of substantial certainty and intentional tort).[3]

---

**3.** We note that even in cases where prior accidents have occurred, courts have found the evidence insufficient to meet the standard of substantial certainty. See, *e.g., Buccione v. Cincinnati, Inc.* (Dec. 13, 1991), Huron App. No. H–90–27, unreported (evidence which included showing of a few prior accidents was not sufficient to raise inference that employer knew accident was substantially certain to occur).

The evidence further indicated that safety equipment was provided by the employer and available at all times. As previously noted, the equipment included gloves, an apron, and a face mask. Foust acknowledged in his deposition testimony that he chose not to wear the equipment. We note that there is no evidence in the record that defendants told Foust not to wear the equipment or that defendants interfered with Foust's use of the equipment.

■ Construing the evidence most strongly in favor of plaintiffs, there was evidence of a lack of uniform application of the use of safety equipment in disposing of the hot oil, and evidence that management knew that the employees were not always wearing the equipment. However, while defendants' failure to ensure that the employees were, at all times, using the available safety equipment might indicate negligence, or even recklessness, such actions fall short of the higher standard of substantial certainty. The mere knowledge and appreciation of a risk does not constitute intent. *Fyffe, supra,* paragraph two of the syllabus. See, *e.g., McConville v. Jackson Comfort Sys., Inc.* (1994), 95 Ohio App.3d 297, 642 N.E.2d 416 (in finding that employee provided insufficient evidence to satisfy second prong of *Fyffe,* court considered fact that, while employees were not required to wear safety equipment, such equipment was provided by employer). Moreover, this is not a case in which the employer failed to provide any safety equipment despite knowledge of a dangerous procedure. While plaintiffs contend that defendants disregarded safer methods to dispose of the oil for economic reasons, there is nothing to indicate that the safety equipment provided by Magnum, assuming it had been used, would not have been sufficient to prevent the employee's injuries. Thus, we find no error with the trial court's determination that, "[g]iven the availability of this protective clothing, it cannot be said that Defendants knew to a substantial certainty that an employee would be injured while disposing of shortening."

A case illustrative of the distinction between mere negligence or recklessness and a factual situation giving rise to an intentional tort is provided in *Pariseau v. Wedge Products, Inc.* (1988), 36 Ohio St.3d 124, 522 N.E.2d 511. In *Pariseau,* a portion of an employee's hand was amputated by a press machine when a ram came down as the result of a failure of a pull-back restraint. At trial, the employee elicited evidence that the ram had a history of repeating, and that it had repeated on the night of the accident. Testimony indicated that management had been informed that the machine repeated, jeopardizing the hands of the operator, and a recommendation had been made to install a safety system, which was not done. There was also evidence presented that the pull-back restraints had been improperly adjusted. Further, other employees testified that they had experienced instances of repeat ram strokes, and that they were frightened to operate the machine. One employee, on the night of the accident, refused to use

the machine. The evidence indicated that the foreman, who removed a piece of wood that employees used to retrieve articles, assigned the task to the plaintiff and told him to use his hands to remove the parts. Finally, there was evidence that two years before, an employee had lost three fingers when the machine repeated.

In *Pariseau*, the trial court, in sustaining the employer's motion for judgment not withstanding the verdict, concluded that the various acts of negligence alleged by the plaintiff failed to constitute an intentional tort. The court of appeals reversed. On further appeal, the Ohio Supreme Court reversed the court of appeals, holding that the evidence was insufficient to show that the employer "manifested an intent to injure the employee," including "knowledge and expectation that such an injury * * * [was] substantially certain to occur." *Id.* at 129, 522 N.E.2d at 516.

In the present case, plaintiffs further point to evidence of after-the-fact opinions by supervisory personnel, stating that they thought the type of incident which injured Foust was likely to happen. We note that defendants deny that the statements were made. However, for purposes of summary judgment, in construing the evidence in favor of the nonmoving party, we assume the statements were made. Again, however, while the evidence points to knowledge of procedures that could cause injury, and evidence of carelessness on Magnum's part relating to compliance with its own procedures, such evidence is simply evidence of negligence or carelessness and does not rise to the level of "substantial certainty." Finally, we note that plaintiffs have cited portions of an operations manual, which provides in part that "[f]iltering fryers is perhaps the most dangerous job in the restaurant." Such evidence regarding the dangerous nature of the procedure, while going to the first element of the *Fyffe* test, is likewise insufficient to satisfy the requirement of substantial certainty. Assuming, *arguendo*, that plaintiffs have shown evidence sufficient to satisfy the first (or third) prong of *Fyffe*, plaintiffs have failed to set forth evidence satisfying the second prong of the test.

In sum, in considering the totality of the evidence, including uncontroverted evidence that the procedure at issue had been performed thousands of times without a prior accident, and the fact that safety equipment was provided by the employer (even though its use was not strictly enforced), reasonable minds could only conclude that defendants were not substantially certain that Foust would be injured in performing the task at issue, and thus plaintiffs have not established a genuine issue of material fact regarding whether defendants committed an intentional tort. Accordingly, the trial court did not err in granting summary judgment in favor of defendants Magnum and Hastings.

Accordingly, plaintiffs' single assignment of error is overruled, and the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

PETREE, J., concurs.

TYACK, J., concurs in part and dissents in part.

TYACK, Judge, concurring in part and dissenting in part.

Since I believe that summary judgment was inappropriate on behalf of Magnum Restaurants, Inc., I respectfully dissent.

All agree that we are to be guided by *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108. No serious question exists that the boiling hot oil used to prepare french fries is dangerous and that extra precautions must be taken to avoid injury when handling and/or disposing of the oil. Everybody agrees that the oil must be discarded periodically. The points of disagreement involve whether or not the procedures used and tolerated by Magnum Restaurants, Inc. were dangerous to its teenage employees to the extent that eventual injury to an employee was a virtual certainty.

Equipment is on the market for a very modest price which avoids handling of the hot oil almost entirely. Magnum Restaurants, Inc. was aware of the equipment and chose not to spend the approximately $500 needed to purchase it. Instead, employees were asked to dispose of the oil used to prepare french fries by carrying the oil in a container over a floor which was periodically slippery. In theory, the container was supposed to have a lid on it, but after the serious injuries to Jonathan Foust, no one could find the lid. In fact, no one had used a lid for quite awhile.

In theory, the employees disposing of the oil were supposed to wear protective garb. No one in management on the night shift at the Burger King enforced the requirement and the young employees did the job in the most efficient and most dangerous way possible. They grabbed the containers while the oil was still hot. They did not take the time to don the protective garb or to let the oil cool.

I believe that we can take judicial notice of the fact that teenagers, especially teenage boys, are sometimes more interested in speed than in safety. Automobile liability insurance premiums tend to prove this, if proof is needed. When an employer asks a young person to handle something as dangerous as french fry oil, I believe that the employer must enforce safety requirements and provide the necessary safety equipment or face liability for the resulting injuries.

As a result, I believe that summary judgment was inappropriate as to Magnum Restaurants, Inc. I would sustain the first assignment of error as to Magnum Restaurants and remand the case for trial as to that named defendant.