DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Plaintiff-appellant Brian Delnoce appeals the order of the Summit County Common Pleas Court granting summary judgment in favor of Bridgestone/Firestone, Inc. ("BFI") on his intentional tort claim. We affirm.
 I
On June 20, 1994, appellant was hired as a temporary employee of BFI. Six weeks later, while operating a rubber mill in the Compound Development Laboratory of BFI, appellant pushed the wrong button on the mill and crushed his right hand between two moving rollers. Appellant brought an intentional tort action against BFI and products liability, negligence, and breach of warranty claims against BFI, Rubber Associated Machinery, Inc. ("RAM"), and Star Electrical Systems, Inc. ("Star").
BFI and RAM moved for summary judgment on all claims against them, and appellant filed briefs in opposition. The trial court granted BFI's motion and granted in part and denied in part RAM's motion. Appellant later settled with and dismissed his claims against RAM and Star. He filed a timely notice of appeal of the trial court's order granting summary judgment in favor of BFI on his intentional tort claim.
 II
Appellant's sole assignment of error is that the trial court erroneously granted summary judgment in favor of BFI on his intentional tort claim because genuine issues of material fact remain on each element of the claim.
 A
In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard used by the trial court.Perkins v. Lavin (1994), 98 Ohio App.3d 378, 381. Pursuant to Civ.R. 56(C), summary judgment is not proper unless
 (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party.
State ex rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587, 589. All doubts are to be resolved in favor of the nonmoving party.Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 686.
A defendant moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact on an essential element of the plaintiff's claim. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429. If the defendant meets its burden, the plaintiff must respond by demonstrating that there are genuine issues of material fact to be tried. Id.
In order to prevail against an employer for an intentional tort, an employee must satisfy a three-part test. Hannah v.Dayton Power Light Co. (1998), 82 Ohio St.3d 482, 484. The employee must prove:
 (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;
 (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and
 (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
Id., quoting Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus. The Ohio Supreme Court has provided guidance as to when an employer's actions are substantially certain to lead to an employee's injury:
 To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. Where the risk is great and the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent.
Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, paragraph six of the syllabus.
In order to overcome a properly supported motion for summary judgment, an employee alleging an intentional tort by his or her employer must set forth specific facts to raise a genuine issue of material fact as to each of the three elements set forth in Fyffev. Jeno's, Inc. See Hannah v. Dayton Power Light Co.,82 Ohio St.3d at 484-485. In order to satisfy the first element of theFyffe test, the employer must have "`actual knowledge of the exact dangers which ultimately caused' injury." Sanek v. DuracoteCorp. (1989), 43 Ohio St.3d 169, 172, quoting Van Fossen v.Babcock Wilcox Co., 36 Ohio St.3d at 112. Next, the employer must have knowledge of the substantial likelihood that the employee would sustain injury in some manner similar to how the injury was actually sustained. Richie v. Rogers Cartage Co.
(1993), 89 Ohio App.3d 638, 644.
 B
BFI supported its motion for summary judgment with appellant's deposition testimony, with deposition testimony from the manager and supervisor of the laboratory where appellant was working when he was injured, and with testimony from a senior laboratory technician assigned to train appellant. The testimony established that the rubber mill on which appellant was working consists of two horizontal rolls. In the forward position, rubber is fed onto the top of the rolls, is compressed between the two rolls, and is intended to band onto the front roll. Each mill has two emergency stop devices, a kick plate in front of the machine and a pull cord that hangs above the rolls, that stop the rolls instantaneously when the mill is being operated in the forward position. Each mill has a control box with four push buttons arranged vertically. From top to bottom, the buttons are labeled "reset," "stop," "start," and "jog/reverse." Occasionally, when rubber is inserted into the top of the mill, it bands on the rear roll rather than on the front roll. When that occurs, it is necessary for the operator to stop the mill, remove the rubber from the rear roll, and re-band it to the front roll while restarting the roll in the forward direction.
After being hired, appellant was given a one-day orientation session and a three-day training session conducted by a senior laboratory technician. The senior technician demonstrated the operation of the rubber mills, including the use of the "start," "stop," and "reset" buttons, and the emergency stop devices. Appellant was told never to use the "jog/reverse" button on the mills and was instructed that putting his hands in certain areas of the mill while it was moving was hazardous. Appellant understood that he could be injured if he caught his hands or fingers between the rolls when the mill rolls were turning.
Following his training session, appellant operated the No. 2 rubber mill for approximately two weeks, with the senior technician observing and instructing. During this period, appellant did not operate the No. 3 mill but observed its operation. The two mills operated in essentially the same manner, but the No. 3 mill was larger. Appellant was told by both his supervisor and the senior laboratory technician never to use the "jog/reverse" button for any reason, and appellant never saw the senior technician use the "jog/reverse" button. After his training period, appellant began operating the equipment himself, although the senior technician was nearby to answer questions.
Appellant was given a document entitled "Safety in Mill Room," which set forth various safety-related rules and instructions. The document was reviewed in point-by-point detail with him by his supervisor. Appellant acknowledged that, when rubber banded to the back roll of the mill instead of to the front roll, he knew that he was to stop the mill, reposition the rubber, and then activate the "start" button. Prior to the time of his accident, appellant had performed this procedure many times without incident. For at least thirty years prior to appellant's injury, no employee's hands had ever been caught between the rolls.
On August 3, 1994, appellant was operating the No. 3 mill because the No. 2 mill was out of service. He had been working on the No. 3 mill for over a day and had successfully re-banded the rubber from the rear roll to the front roll several times. On his final effort, after successfully stopping the machine and repositioning the rubber, appellant inadvertently pushed the "jog/reverse" button instead of the "start" button, causing his hand to be crushed between the rolls of the machine. Appellant repeatedly kicked the emergency stop plate, which failed to instantaneously stop the rolls as it had when the mill was in the forward position.
In his brief in opposition to BFI's motion for summary judgment, appellant included the affidavit of an expert in human factors and industrial engineering from Ohio State University, who reviewed deposition transcripts and exhibits related to the mill and to appellant's accident. He stated in his affidavit:
 G. The employer, Bridgestone/Firestone, knew that the configuration of the mill was dangerous. The employer knew that the Jog/Reverse Button was hazardous and that inadvertent activation of the Jog/Reverse button was dangerous. The employer knew that Mr. Delnoce would have occasion to re-band the material to the front roll, and trained him in the method he used to re-band the material to the front roll. In doing so, they placed Mr. Delnoce in a situation in which it was substantially certain that he would become seriously injured.
 H. The operator, Mr. Delnoce, was engaged in a divided attention task[.] His right hand was holding the material under the rolls and near an in-running nip point while he was attempting to activate the Start Button with his left hand. The shapes of the Start Button and Jog/Reverse Button are identical. They feel and look the same to the operator. The two buttons are essentially in the same location, immediately adjacent to each other. Under these circumstances, it is substantially certain that the operator will inadvertently activate the Jog/Reverse Button. It also is substantially certain that the operator will be seriously injured when his hand is drawn into the nip point between the two rolls. Mr. Delnoce was placed into circumstances by Bridgestone/Firestone which were an "accident" waiting to happen, a substantial certainty.
Appellant also relied on: (1) an exhibit entitled "Safety Procedure No. 123," in which BFI acknowledged: "The hazard of laboratory mills is greater than that of production mills because the roll diameter is so small that the operator's hands are never far from the bite of the rolls when working stock"; (2) an exhibit entitled "American National Standard Institute ("ANSI") Standard B28.1-1967," which requires an emergency stop mechanism on all rubber mills; and (3) OSHA requirement 29 CFR 1910.216, which requires a safety trip control that "shall operate readily on contact."
Appellant's position is that his evidence established that BFI knew the rubber mills were dangerous, knew the nip point of the mills was unguarded, knew the emergency stop mechanism did not operate when the machine was operated in reverse, knew the jog/reverse button was hazardous and unnecessary, knew that hands drawn into the rolls were certain to be seriously injured, knew that its procedure for re-banding rubber from the rear roll to the front required the operator to hold the rubber with one hand and activate the "start" button with the other, and knew that inadvertent activation of the "jog/reverse" button would cause the rolls to move in the reverse direction and draw the operator's hand into the nip point.
 C
Although BFI was generally aware of the open and obvious danger posed by the pinch points between the moving rolls of the rubber mills, the central issue in this case is whether BFI knew with substantial certainty that harm to an employee would result from use of the mill. "[E]xposure to hazardous or unusually dangerous conditions or processes is insufficient by itself to constitute a basis for bringing an intentional tort claim against an employer." Youngbird v. Whirlpool Corp. (1994), 99 Ohio App.3d 740,745. An employer cannot be held responsible for an intentional tort where unanticipated actions by an employee, and not malfeasance on the part of the employer, lead to injury. SeeSanek v. Duracote Corp., 43 Ohio St.3d at 172-173.
Appellant's injuries were not the probable consequence of any action or inaction on the part of BFI. BFI never instructed appellant to use the "jog/reverse" button, which set in motion the sequence of events that produced appellant's injury. To the contrary, BFI told appellant never to use the "jog/reverse" button. BFI cannot be held to knowing with substantial certainty that appellant, contrary to all of his training, would push the "jog/reverse" button rather than the "start" button because he failed to look at the button before pushing it. When an employee exceeds the boundaries of what is an acceptable use of a machine or process, and acts beyond the expectations that the employer has placed on the employee, knowledge of the risk created by the employee cannot be imputed to the employer. Trojan v. Ro-MaiIndustries, Inc. (Aug. 19, 1998), Summit App. No. 18778, unreported, at 11. An employee who is injured by pushing the wrong button against the instructions of his employer, without more, has failed to demonstrate that his employer committed an intentional tort. Id. at 11-12.
The affidavit of appellant's expert witness was not adequate to create the existence of a genuine issue of material fact as to the second prong of the intentional tort test. An expert's affidavit that does nothing more than echo an employee's opinion about the dangers of his work does not raise a genuine issue of material fact as to the employer's knowledge that injury was substantially certain to result from the work. Hoadley v. QualityCastings Co. (Apr. 24, 1996), Wayne App. No. 95CA0070, unreported, at 8-9. See, also, Jackson v. Alert Fire Safety Equip., Inc.
(1991), 58 Ohio St.3d 48, 52 (resting on mere allegations against a motion for summary judgment is insufficient to adequately refute specific facts and create a triable issue).
There was no evidence of similar accidents at BFI for at least thirty years prior to appellant's injury. The absence of prior accidents strongly suggests an absence of knowledge by an employer that injury from a particular procedure or process was substantially certain to occur. Foust v. Magnum Restaurants, Inc.
(1994), 97 Ohio App.3d 451, 455. Moreover, there was no evidence that BFI was cited for violating any relevant health or safety codes. The mills were equipped with emergency stop mechanisms as required by ANSI Standard B28.1-1967 and with safety trip controls as required by OSHA. Even viewing the totality of the evidence in a light most favorable to appellant, there was no issue of material fact remaining as to whether BFI knew with substantial certainty that appellant would be injured by operating the mill.
 III
Appellant's assignment of error is overruled. The decision of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _________________________________ WILLIAM R. BAIRD, FOR THE COURT
SLABY, P. J.
REECE, J., CONCUR