Plaintiff-appellant Theresa Dennis-Heard appeals from the judgment of the Franklin County Court of Common Pleas granting defendant-appellee, United Parcel Service's ("UPS") motion for summary judgment. Because appellant has failed to satisfy the three-part test set forth by the Ohio Supreme Court in Fyffe v.Jeno's, Inc. (1991), 59 Ohio St.3d 115, for an intentional tort claim against an employer, we affirm the judgment of the trial court.
On August 19, 1990, Theresa Dennis-Heard ("Heard") began working for UPS as a "bottom slide clerk" at its Trabue Road hub facility. On November 12, 1991, a package fell from an overhead conveyor belt and slide system and struck Heard on her head and right shoulder. (Heard depo., at 20-21.)
The UPS Trabue facility was constructed in 1987 with a conveyor belt and slide system designed and engineered by UPS. Approximately six million packages are processed through the facility each year using this system. (Fogle depo., at 49.) The overhead conveyor belt is approximately eleven feet above floor level and is sixty inches wide. (Wicker depo., at 45.) The conveyor travels between fifty and one hundred fifty feet per minute, moving as many as three thousand packages per hour. The conveyor has side panels approximately one foot high. (Wicker depo., at 33).
At four locations in the conveyor system, there are sets of top and bottom slides. Packages on the conveyor belt are diverted down the top slide to employees who sort the packages. Damaged or improperly labeled packages are further sorted and sent down the bottom slide. Heard worked at the bottom of this second slide where she corrected mislabeled and missorted packages.
On November 12, 1991, Heard began work at 4:30 a.m. Heard described her workstation as "the whole hub" (Heard depo., at 52), but typically, Heard stood and worked directly under the top slide. This location provided shelter from any packages that might fall from the overhead conveyor belt or top slide. On the day of her injury, however, Heard positioned herself to the side of the top slide because other UPS workers had stacked packages in her normal work area.
Shortly after Heard started to work, a package fell off of the top slide and struck her on her head and right shoulder. (Heard depo., at 25.) Heard was knocked to the floor where she stayed until the scheduled break around 5:45 a.m. when her supervisors helped her off the floor. After allowing her to rest for an hour, a supervisor requested that she return to work. (Heard depo., at 28.) Heard went back to her work area, but then immediately went to the restroom complaining of nausea. Her injuries were not addressed until around 9:30 a.m. when she was taken to the hospital. (Heard depo., at 33.)
Heard filed for and received workers' compensation benefits for her injuries. She also initiated suit asserting an employer intentional tort claim against UPS. UPS moved for summary judgment, which the trial court granted in favor of UPS. Heard appeals that decision assigning as error:
 In this intentional tort action, the trial court erred in granting the defendant-appellee's motion for summary judgment where plaintiff-appellant provided ample evidence for each of the elements of an intentional tort, and the trial court chose instead to improperly weigh evidence and engage in fact finding rather than properly using the appropriate standard for reviewing appellee's motion for summary judgment.
Appellate review of summary judgments is de novo. Koosv. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588;Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6, 8. Summary judgment is appropriate only if there is no genuine issue of material fact; the moving party is entitled to judgment as a matter of law; and, construing all evidence in favor of the nonmoving party, reasonable minds could reach only a conclusion in favor of the moving party. Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. Viewing all facts in a light most favorable to the nonmoving party, the court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Turnerv. Turner (1993), 67 Ohio St.3d 337, 340. An intentional tort issue goes to a jury only if there is probative evidence, which, if believed, would permit reasonable minds to come to different conclusions as to the essential issues of the case. Sanek v.Duracote Corp. (1989), 43 Ohio St.3d 169, 172.
The Ohio Supreme Court in Fyffe, supra, paragraphs one and two of the syllabus, set forth the law applicable to an intentional tort action brought against an employer:[1]
 1. Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser Keeton on Torts (5th Ed. 1984), in order to establish "intent" for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (Van Fossen v. Babcock Wilcox Co. [1988], 36 Ohio St.3d 100 * * * paragraph five of the syllabus, modified as set forth above and explained.)
 2. To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk something short of substantial certainty is not intent. (Van Fossen v. Babcock Wilcox Co. [1988], 36 Ohio St.3d 100 * * * paragraph six of the syllabus, modified as set forth above and explained.)
In order to overcome a properly supported motion for summary judgment, an employee alleging an intentional tort by his or her employer must set forth specific facts to raise a genuine issue of material fact as to each of the elements set forth inFyffe. See Hannah v. Dayton Power and Light Co. (1998), 82 Ohio St.3d 482,484-485. A suit will survive a motion for summary judgment if the court determines an employer's conduct is legally considered to be, or can legally be inferred to be, an intentional act to injure. Richie v. Rogers Cartage Co. (1993), 89 Ohio App.3d 638,644. Thus, the determinative issue in many employer intentional tort cases is whether a genuine issue of material fact exists on the very question of the employer's knowledge of the certainty of harm to which the plaintiff was subjected based upon the facts before the court. Taulbee v. Adience (1997), 120 Ohio App.3d 11,17.
Applying the first prong of the Fyffe test and considering the evidence in the light most favorable to Heard, a genuine issue of material fact exists as to whether UPS knew that the conveyor and slide system was a dangerous process, procedure, instrumentality or condition.
As evidence in support of the first prong of Fyffe, Heard offered affidavits from Philip L. Nine, an electrical and agricultural engineer, and W. Gene Hayden, an engineer. Both experts inspected the conveyor and slide system at the Trabue facility. According to Mr. Nine, the UPS conveyor and slide system was "defective both in design and manufacture and, therefore, unreasonably dangerous." (Nine affidavit.) According to Mr. Hayden, the conveyor and slide system did not comply with Ohio safety regulations and industry safety standards. (Hayden affidavit.) Both engineers stated that the height of the side panels was inadequate to prevent packages from falling over the edge of the conveyor and slide system. (Hayden affidavit.) Further, Mr. Wesley Wicker, an engineer for UPS, acknowledged in his deposition testimony that the overhead conveyor system presents certain safety hazards to the people working below it. (Wicker depo., at 12.)
Heard stated in her deposition that she saw boxes fall off the conveyor system "all the time." (Heard depo., at 44.) She also stated that she had seen "three, four, sometimes six" (Heard depo., at 49) packages fall off the top slide "eight or ten times" prior to November 12, 1991. (Id. at 45.) She further stated that when this occurred, she "usually was underneath the slide and I would tell the supervisor we've got problems down here, packages are falling, you guys are going to have to do something. We're doing the best we can." (Heard depo., at 46.) Mr. Wicker also testified by way of deposition that he had seen packages fall from the overhead conveyor. (Wicker depo., at 53, 60.) Further, Heard testified that she had been present when engineers and supervisors witnessed packages falling. (Heard depo., at 54.) Heard also stated, "I didn't talk to anybody about the packages falling until after my accident." (Heard depo., at 58.) However, in the context of her deposition and construing the evidence in the light most favorable to Heard, it is reasonable to infer that Heard was referring to a different group of engineers and supervisors from the supervisors she informed when the packages were falling.
The expert testimony indicates that the conveyor and slide system was a dangerous instrumentality, and while arguably a violation of an administrative safety code, such facts do not demonstrate an intentional tort per se. Patton v. J. H.Reinforcing Structural Erectors, Inc. (Dec. 9, 1994), Scioto App. No. 93-CA-2194, unreported. Further, Heard testified that she had personally made supervisory personnel aware of the falling packages prior to the incident in which she was injured. (Heard depo. at 46.) Moreover, the fact that UPS officials had also previously observed packages falling over the edge of the conveyor system indicates that they were aware of the hazard before the injury to Heard occurred. Thus, the evidence offered by Heard satisfies her burden of establishing a genuine issue of material fact regarding the first element of the Fyffe test.
In order to satisfy the second element of the Fyffe testat trial, Heard would have to show by a preponderance of the evidence that UPS knew that she was substantially certain to be injured by a package falling from the conveyor and slide system. However, to defeat UPS's motion for summary judgment, Heard must only produce evidence creating a genuine issue of material fact that UPS knew of the substantial certainty of injury. Again, the summary judgment standard is whether, construing all evidence in favor of Heard, reasonable minds could only reach a conclusion in favor of UPS.
Prior accidents resulting from the hazard are probative of whether an employer knows that an injury is substantially certain to occur. Foust v. Magnum Restaurants, Inc. (1994),97 Ohio App.3d 451. Though Heard was not personally aware of people being injured until after her own injury (Heard depo., at 54) it is only the employer's knowledge of injury that is at issue. Based on its own injury reports, UPS knew that its employees had previously been injured when packages fell from the conveyor and slide system. Eight injury reports from the previous two years were provided by UPS and entered into the record. The reports indicate that: a supervisor was knocked to the ground when a package fell on his head from a trailer chute, (Fogle depo., at exhibit 1); a "very large and heavy" box fell on an employee's head, (Id., exhibit 2); a twelve-pound box fell off a conveyor belt onto an employee's head, breaking her glasses (Id., exhibit 3); an employee was hit on the left shoulder when a box fell from the overhead conveyor belt (Id., exhibit 4); two employees had large boxes fall from a lower conveyor belt and injure their toes (Id., exhibits 5 and 7); an employee was hit in the head when a package fell off a "low pickoff" (Id., exhibit 6); and another employee injured his hand when a thirty-to-forty pound package fell off the slide (Id., exhibit 8.) Heard's accident report was the ninth report in two years related to the conveyor and slide systems. Nonetheless, Ms. Fogle, the Workers' Compensation Case Management Supervisor for UPS, testified by way of deposition that, "I don't know that [eight injury reports in two years] would be considered a serious, serious problem." (Fogle depo., at 50.)
UPS relies heavily on the fact that none of the UPS injury reports specifically indicate that another bottom slide clerk had been injured by a package falling from a top slide. UPS claims the lack of prior accidents involving bottom slide clerks shows that injury to Heard was not substantially certain to occur. However, the evidence suggests that the danger of falling packages was a facility-wide hazard. Thus, in this instance, the injured employee's job classification is, at best, only marginally relevant to the second prong of the Fyffe test. Construing the evidence in the light most favorable to Heard, the injury reports establish a pattern of injuries related to the conveyor and slide system of which UPS was aware. Further, UPS claims that Heard was not in her normal work position, but again, construing the facts in favor of Heard, her work area was "all throughout the hub." (Heard depo. at 52.) Therefore, Heard could potentially have been injured at any location in the facility where she was exposed to the overhead conveyor and slide system.
In addition to determining how often similar accidents have occurred, we must also analyze the employers' knowledge ofthe degree of risk involved. This court has held that even if an injury is foreseeable, and even if it is probable that the injury would occur if one were exposed to the danger enough times, "there is a difference between probability and substantial certainty."Ruby v. Ohio Dept. of Natural Resources (Dec. 3, 1992), Franklin App. No. 92AP-947, unreported (1992 Opinions 5599). Further, the Supreme Court has held that under Fyffe, the issue is whether UPS only had "the mere knowledge and appreciation of a risk—something short of substantial certainty—[which] is not intent." Id. at paragraph two of the syllabus.
In Goodwin v. Karlshamns U.S.A., Inc. (1993), 85 Ohio App.3d 240, a faulty vent on the plant roof caused an explosion, seriously injuring Mr. Goodwin. Evidence in that case indicated that plant officials knew about the faulty vent and the potential for a hydrogen gas explosion, but that there was no method for employees working near the tank to be alerted to the presence of hydrogen gas. This court held that summary judgment for Karlshamns was appropriate because "a showing of a significant risk of an explosion does not constitute a showing that an explosion was a substantial certainty. Karlshamns certainly could have been considered reckless in its failure to address the problems at its plant more aggressively. However, reckless tort is not sufficient to allow recovery against one's employer." Goodwin, at 246.
Similarly, although the danger to Heard may have been significant, the probability of her being injured does not reach the level of substantial certainty. Heard has failed to produce evidence of a genuine issue of material fact suggesting that UPS had knowledge to a substantial certainty that she would be injured by a package falling from the conveyor and slide system. LikeGoodwin, the fact that UPS uses a dangerous instrumentality in its business operations does not create the substantial certainty of injury necessary to meet the second element of Fyffe. VanFossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 117. Thus, while evidence that packages have fallen and injured employees in the past indicates that such injuries will possibly or even likely occur in the future, it does not constitute a showing that Heard's injury was substantially certain to occur. See Jones v. VIP Development Co. (1984), 15 Ohio St.3d 90, 95. Further, "exposure to hazardous or unusually dangerous conditions or processes is insufficient by itself to constitute a basis for bringing an intentional tort claim against an employer."Youngbird v. Whirlpool Corp. (1994), 99 Ohio App.3d 740, 745.
While the evidence of the UPS injury reports may indeed raise the issue of negligence, or even recklessness, it does not create a genuine issue of material fact as to whether UPS knew to a substantial certainty that Heard would be injured by the conveyor and slide system. Plaintiff-appellant has failed to satisfy the second element of the Fyffe test, and therefore, cannot prevail against Defendant-appellee's motion for summary judgment.
Regarding the third prong of the Fyffe test, Heard would have to show that UPS required her to work under the dangerous conveyor and slide system despite the knowledge to a substantialcertainty that she would be injured. Given Heard's testimony that her workstation was throughout the UPS facility, a genuine issue of material fact exists as to whether UPS required her exposure to the hazard. However, she has failed to show that a genuine issue of material fact exists as to whether the hazard was substantially certain to cause her injury. Because the third element of theFyffe test incorporates the first and second elements, and given our disposition on the second element, Heard cannot satisfy the third prong of the Fyffe test.
Based on the foregoing, appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
TYACK and DESHLER, JJ., concur.
[1] We note that Ms. Heard's injuries were sustained in 1991, several years prior to the enactment of R.C. 2745.01 on November 1, 1995. Therefore, we only consider this case in light of the common law employer intentional tort as defined by Fyffe, supra. See Johnson v. BP Chemicals, Inc. (1999), 85 Ohio St.3d 298, finding R.C. 2745.01 unconstitutional.