OPINION
{¶ 1} Dana M. Adkins appeals from the trial court's entry of summary judgment against her on a workplace intentional-tort claim against her employer, appellee Anderson-Austin News Company.
 {¶ 2} Applying the familiar three-part test set forth in Fyffe v.Geno's, Inc. (1991), 59 Ohio St.3d 115, the trial court held that Adkins did not demonstrate a genuine issue of material fact on the second element of her claim. In particular, the trial court found no evidence from which a jury could conclude that Anderson-Austin was substantially certain Adkins would be harmed by unsecured cargo falling on her when she opened the door of a delivery truck.
 {¶ 3} In her sole assignment of error, Adkins contends the trial court erred in sustaining Anderson-Austin's summary judgment motion because genuine issues of material fact exist on each element of her claim.
 {¶ 4} Our review of the trial court's decision to grant summary judgment is de novo. Helton v. Scioto Cty. Bd. of Commrs. (1997),123 Ohio App.3d 158, 162. Summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion is made. State ex rel.Grady v. State Emp. Relations Bd., 78 Ohio St.3d 181, 183, 1997-Ohio-221.
 {¶ 5} To establish an intentional-tort claim against an employer, an employee must demonstrate: (1) that the employer had knowledge of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) that the employer had knowledge "that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty;" and (3) "that the employer under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffe, supra, at paragraph one of the syllabus; see also Van Fossen v. Babcock WilcoxCo. (1988), 36 Ohio St.3d 100.
 {¶ 6} It is well settled that an employer-intentional-tort claim requires proof beyond that required to establish negligence or recklessness:
 {¶ 7} "Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Fyffe, supra, at paragraph two of the syllabus. Because the applicable standard is exceedingly difficult to satisfy, "[t]he intentional tort cause of action is limited to egregious cases." Sanekv. Duracote Corp. (1989), 43 Ohio St.3d 169, 172.
 {¶ 8} With the foregoing requirements in mind, we turn now to the evidence in this case.[1] The record reflects that Anderson-Austin, a distributor of periodicals to retail outlets, hired Adkins in August 1999 to work as a merchandiser. Her responsibilities included placing new books and magazines on store shelves and removing outdated materials. (Adkins depo. at 17-18). In April 2001, Adkins assumed more responsibilities. In addition to her merchandising tasks, she began driving a panel truck and dropping off new periodicals and hauling away the outdated ones.[2] (Id. at 19-21). Adkins transported the periodicals in "totes" that were stacked on pallets in the back of her truck. She described the totes as hard plastic boxes that were approximately three feet wide, three feet long, and two feet high. (Id. at 19). Dock hands loaded filled totes into the back of Adkins' truck each morning prior to her departure. (Id. at 33). Her truck was large enough to hold six pallets (three along each side wall) loaded with a total of 300 to 400 totes containing periodicals. (Id. at 47-48).
 {¶ 9} Adkins' immediate supervisor, Diana Washburn, rode with her for the first two days on her new delivery route. (Id. at 35). During that time, Adkins noticed that stacked totes were falling over in the back of the truck as she drove. (Id. at 42). This prompted Washburn to comment that "we're going to have to get some straps for you." (Id.). Washburn proceeded to explain that loading straps were used to secure the totes. (Id. at 42-43). The straps were made of seat-belttype material with a hook at each end. Anderson-Austin drivers wrapped a loading strap around a pallet of totes and then attached the two hooks to the side of the delivery truck, thereby securing the pallet in place. (Id. at 45-47). After mentioning the loading straps to Adkins, Washburn advised her to request them from P.J. Hawse, a higher-level supervisor. (Id. at 43).
 {¶ 10} Adkins subsequently requested loading straps from Hawse "[e]very day from that day." (Id. at 44). Hawse told Adkins that she would obtain some straps but never did. (Id.). On one occasion, Hawse informed Adkins that the straps were hard to get because they were expensive and had to be written into the budget. (Id. at 54, 89). Hawse also told Adkins that she "would get used to the things falling on [her]." (Id. at 89). In addition to Hawse, Adkins requested loading straps from the dock hands who loaded her truck. (Id. at 52-53). Approximately once a week, the dock hands would obtain a single strap and hide it in a drawer for Adkins. Shortly thereafter, however, someone would remove the strap from her truck after she completed her route. (Id.).
 {¶ 11} The first Friday that Adkins drove her route she mentioned her need for loading straps to supervisors Jerry Judson and Shawn Ohlsson. (Id. at 50-51). The two men spoke to Adkins on that occasion and asked her how she was doing. She responded that she had been asking for loading straps. One of the two men stated that he would "look into it" for her. (Id.). The following Friday, either Judson or Ohlsson saw Adkins again, observed bruises on her legs, and inquired about them.[3] (Id. at 51). In response to a question about where she got the bruises, Adkins told him they resulted from "all the freight falling on me because I don't have straps." (Id.). Judson or Ohlsson then commented: "[W]e have to make sure we get them for you." He added that she would "have to get used to those bruises — to have the totes falling on [her]." (Id.). Neither Judson nor Ohlsson ever gave Adkins any loading straps. (Id. at 52).
 {¶ 12} Adkins' trouble with falling totes typically arose when she was opening the rear door of her delivery truck. (Id. at 55). The rear door was a sliding "roll door" that she opened by lifting it toward the top of the truck. Because of her trouble with shifting cargo, Adkins tried to open the rear door slowly to make sure no totes fell out. (Id. at 77-78). As she would pull the door up, she would see totes that had shifted position so they were "teetering different ways[.]" (Id.).When Adkins would try to straighten the load, the totes sometimes fell. (Id.). Other times, displaced totes would start to fall out the back of the delivery truck as Adkins raised the rolling door. She would stop them and push them back into the truck. (Id. at 77-78).
 {¶ 13} On Tuesday, May 29, 2001, the day of the accident underlying this appeal, Adkins arrived at work to find her delivery truck "very full." An extra load had been placed in it due to a holiday the previous day. (Id. at 67-68). Adkins does not recall having any loading straps on her truck that day. (Id. at 70-71). In any event, she proceeded to run her route, dropping off new materials and loading outdated periodicals onto her truck. (Id. 67-68). Every time she drove to a new location, the totes would shift in the back of her truck. (Id. at 74). Upon opening the rear sliding door, she would see totes laying on the floor or leaning. (Id. at 75). Because Adkins had a full load, the totes were stacked near the door and more than six feet high, leaving her just enough room to step inside. (Id.).
 {¶ 14} Toward the end of the day, Adkins stopped at a K-Mart to retrieve empty totes. (Id. at 68). She opened the rear door of her truck the same way she always had, and a tote fell out and hit her on the leg. (Id. at 78-80). While trying to grab the tote, she let go of the door, which proceeded to roll all the way up. (Id.). At that point, twelve to fifteen totes weighing fifty to sixty pounds each came "tumbling [out] left and right" and knocked Adkins down. (Id. at 68-69, 78-80). The falling totes broke Adkins' leg and severed her peritoneal nerve. (Id. at 90). As a result of the accident, she is largely confined to a wheelchair and experiences severe chronic pain. (Id. at 90-93).
 {¶ 15} Although Adkins believed three other Anderson-Austin employees had been injured by totes, she had little knowledge about the circumstances surrounding the injuries. (Id. at 86-88). Adkins thought two of the injured workers had hurt their back while lifting totes. (Id. at 87). She believed one other employee may have been hurt by a falling tote, but she really did not know how the injury was sustained. (Id.). Supervisor Diana Washburn also recalled once seeing P.J. Hawse picking up totes that appeared to have fallen out of a truck. (Washburn depo. at 36-37). On that occasion, Washburn observed a scratch on Hawse but did not know how she received it. (Id. at 37-38). Washburn also recalled another employee who had hurt his back lifting totes. (Id. at 38).
 {¶ 16} In its summary judgment ruling, the trial court concluded that the record revealed a genuine issue of material fact on the first element of Adkins' intentional-tort claim. Construing the evidence in a light most favorable to Adkins, the trial court found that Anderson-Austin had knowledge of a dangerous procedure in its business operation. In particular, the company knew that workers were in danger of being injured by shifting totes due to the absence of loading straps. (Decision, Order and Entry, Doc. #26 at 5). The trial court also found a genuine issue of material fact on the third element of her claim. By failing to provide Adkins with the requested loading straps, the trial court reasoned that Anderson-Austin could be found to have required Adkins to perform a dangerous task. With regard to the second element of Adkins' claim, however, the trial court found no genuine issue of material fact as to whether Anderson-Austin knew with substantial certainty that she would be injured by unsecured totes. In support, the trial court reasoned:
 {¶ 17} "Plaintiff's claim that her injuries are the result of the intentional tort of her employer fails, however, on Fyffe's second prong. Defendant's representatives have averred that they were not aware of any other employees being injured `from unbalanced totes falling from a truck or otherwise in a manner Plaintiff was injured.' See Affidavits of Jerry Judson, Shawn Ohlsson and P.J. Hawse. Although Plaintiff has presented evidence that she sustained bruises and that Ms. Washburn saw totes falling on other workers, there is no evidence that any of these other injuries were of the same nature that Plaintiff sustained on May 29, 2001. Further, she has presented no evidence that any of the alleged injuries resulted solely from the lack of availability holding straps. In addition, other than her own [testimony], Plaintiff produced no evidence from any of the allegedly injured employees. Ms. Washburn's reference to these third party injuries in her affidavit, without details regarding the seriousness of the injuries or evidence that straps were specifically not available to the employees in question, is not enough to withstand Defendant's motion for summary judgment. Moreover, even if Defendant was aware of minor injuries caused by shifting totes, `mere knowledge and appreciation of a risk, something short of substantial certainty, is not `intent' for purposes of proving the employer committed an intentional tort against its employee.' (citations omitted). The evidence presented by Plaintiff does not create a genuine issue of material fact that Defendant was substantially certain that she would be injured if holding straps were not available." (Id. at 6-7).
 {¶ 18} Upon review, we agree with the trial court's assessment that Adkins demonstrated a genuine issue of material fact on the first element of her intentional-tort claim. Construed most strongly in Adkins' favor, the record reflects that Anderson-Austin supervisors knew her load was shifting because she lacked loading straps. Company supervisors also knew that falling totes were hitting her and bruising her legs. Thus, Anderson-Austin had knowledge of a dangerous procedure or condition within its business operation.
 {¶ 19} In opposition to this conclusion, Anderson-Austin insists it had no knowledge of any employees who lacked loading straps. If we were construing the evidence in a light most favorable to the company, this argument might be persuasive. In the summary judgment context, however, we must construe the evidence in a light most favorable to Adkins. She contends that she lacked loading straps and made this fact known to management on several occasions. Anderson-Austin also suggests that a shifting load is possible even when loading straps are used. Although this may be so, the potential for injury obviously is magnified when loading straps are not used. Finally, the company suggests that Adkins carried a relatively light training load and that she could have avoided injury by stacking her totes toward the front of the truck. Once again, this argument might be persuasive if we were construing the evidence in favor of Anderson-Austin. Adkins and Washburn both testified, however, that Adkins carried relatively full loads, resulting in a need to stack totes toward the back doors. Thus, we find a genuine issue of material fact on the first element of Adkins' claim.
 {¶ 20} We also concur in the trial court's finding that Adkins established a genuine issue of material fact on the third element of her claim. Construed most strongly in Adkins' favor, the record reflects that Anderson-Austin knowingly required her to perform a dangerous task, to wit: the delivery and handling of totes without loading straps.
 {¶ 21} Anderson-Austin disputes the foregoing conclusion, arguing that it did not require Adkins to perform her work without loading straps. Citing its own affidavits, the company insists that it "has an abundance of holding straps" and that Adkins could have had them if only she had asked. The problem with this argument, of course, is that it contradicts Adkins' testimony that the loading straps were not given to her despite her requests for them.
 {¶ 22} Anderson-Austin also suggests that Adkins exposed herself to the risk of injury by improperly loading her totes toward the rear of her truck rather than stacking them near the front.[4] Once again, however, the record contains evidence from which a trier of fact could find that stacking totes near the rear door was necessary because Adkins' truck was full. As a result, we find Anderson-Austin's argument to be unpersuasive.
 {¶ 23} Finally, Anderson-Austin stresses Adkins' inability to recall whether her truck might have been equipped with one loading strap on the day of her injury. The company then asserts that "[i]f Plaintiff had just one holding strap in her vehicle, this could have secured her entire load." Thus, the company contends that it did not require Adkins to perform a dangerous task. We disagree. Although she could not recall with certainty, Adkins did not remember having any loading straps available on the day in question. Given that she typically had a single strap available only about once a week, a trier of fact reasonably could find that she did not have a loading strap on May 29, 2001. In any event, even if Adkins did have one strap, the record contains evidence from which a trier of fact could find that it would not have secured her entire load. Adkins testified that her truck held up to six pallets of totes, and it was full on the day in question. According to Anderson-Austin's own summary judgment affidavits, each pallet requires at least one or two loading straps. As a result, one loading strap could not have secured Adkins' load.
 {¶ 24} The remaining question is whether the trial court erred in finding no genuine issue of material fact on the second element of Adkins' intentional-tort claim. As set forth above, the trial court relied on the lack of evidence about similar prior accidents involving other employees to conclude that Anderson-Austin did not know with substantial certainty that Adkins would be injured by falling totes. Having reviewed the record, we agree with the trial court's determination that Adkins' evidence of similar prior accidents involving other employees was lacking.
 {¶ 25} Ordinarily, the absence of prior accidents does strongly suggest a lack of knowledge by an employer that injury from a particular procedure or condition was substantially certain to occur. Foust v. MagnumRestaurants, Inc. (1994), 97 Ohio App.3d 451, 455, 646 N.E.2d 1150. In the present case, however, we reject the trial court's reliance on a lack of prior accidents involving totes falling on other employees to find Anderson-Austin entitled to summary judgment. Under the facts of this case, the lack of such prior accidents does nothing to demonstrate the absence of substantial certainty that Adkins would be harmed. This is so because a trier of fact could find that Adkins was the only employee
who was subjected to the dangerous procedure or condition at issue. Thus, the lack of prior accidents is neither significant nor surprising.
 {¶ 26} The non-existence of prior accidents is meaningful when other employees have been subjected to the same dangerous condition. For example, if none of Anderson-Austin's workers used loading straps and no injuries ever had occurred, then it would be reasonable to conclude that the company was not substantially certain Adkins would be hurt by falling totes. In its summary judgment memorandum, however, Anderson-Austin presented evidence that its drivers are trained to use loading straps and that the straps are readily available. In addition, Adkins conceded in her deposition that she had no personal knowledge as to whether any of the company's other drivers used loading straps. She admitted that she may have been the only driver who was without the straps. As a result, a trier of fact could find that all other Anderson-Austin drivers did use loading straps. In light of Adkins' deposition testimony, a trier of fact also could find that Anderson-Austin supervisors failed to provide her with any loading straps despite the fact that they were requested and available. But if Adkins was the only employee subjected to the danger of falling totes due to a lack of loading straps, then the non-existence of similar accidents involving other employees is meaningless. Consequently, the trial court erred in relying on an absence of injuries to other employees to find that Anderson-Austin could not have been substantially certain of Adkins' injury.
 {¶ 27} The question still remains, however, whether Adkins has demonstrated a genuine issue of material fact on the second element of her intentional-tort claim. Although the issue is perhaps a close one, we believe a trier of fact could find that Anderson-Austin knew Adkins was substantially certain to be harmed by falling totes. "Whether any harm was a substantial certainty in the context of Van Fossen depends on the probability of its occurrence. * * * When used as an adjective,substantial means that which is specified to a large degree or in the main." Busch v. Unibilt Indus., Inc. (Sept. 22, 2000), Montgomery App. No. 18175.
 {¶ 28} In the present case, the loaded totes weighed fifty to sixty pounds each, and they were stacked more than six feet high. Anderson-Austin supervisors knew that the totes were falling on Adkins. As set forth above, she had discussed the problem with P.J. Hawse and either Jerry Judson and Shawn Ohlsson. Hawse informed her that she "would get used to the things falling on [her]." When either Judson or Ohlsson observed bruises on her legs, she explained that they resulted from "all the freight falling on me because I don't have straps." He replied that she would "have to get used to those bruises — to have the totes falling on [her]." In our view, a trier of fact reasonably could find that Anderson-Austin knew injury was substantially certain to result from stacks of fifty to sixty-pound totes falling on Adkins.
 {¶ 29} In opposition to the foregoing conclusion, Anderson-Austin argues that Adkins "had performed her rounds without loading straps for almost two months without incident." According to the company, "reasonable minds could not possibly conclude that there was substantial certainty of harm in a condition that Plaintiff encountered many times daily for almost two months without harm." We disagree. As an initial matter, we are unpersuaded by the argument that an accident is not substantially certain to occur, as a matter of law, merely because a similar accident has not occurred over the preceding two months. In any event, the record does not support the company's claim that Adkins had performed her work for two months "without incident." Although she had not experienced a serious injury prior to May 29, 2001, Adkins had complained about totes falling on her almost from the outset of her employment as a driver. She also had been hit by totes, resulting in bruising severe enough for others to notice. Thus, a trier of fact could find that the company knew continued harm to Adkins from falling totes was a substantial certainty in the absence of loading straps.
 {¶ 30} Anderson-Austin next argues, however, that even without loading straps an injury from falling totes is not substantially certain to occur. In support of this proposition, the company cites affidavits from Judson, Ohlsson, and Hawse. These individuals each averred that drivers can avoid injury by properly stacking totes toward the front of the truck and opening the rear door with caution. As noted above, however, the record contains evidence from which a trier of fact could find that Adkins' truck was relatively full and that she had stacked totes near the rear door out of necessity. Moreover, Adkins testified that she did open the rear door with caution because she was aware of falling totes. As a result, Anderson-Austin's affidavits do not demonstrate its entitlement to summary judgment.
 {¶ 31} Based on the reasoning set forth above, we conclude that Adkins established a genuine issue of material fact on each element of her workplace intentional-tort claim. Accordingly, we sustain her assignment of error, reverse the trial court's entry of summary judgment in favor of Anderson-Austin, and remand this cause for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
Wolff, J., and Donovan, J., concur.
[1] Although the record contains conflicting evidence on several issues, we have resolved all such conflicts in favor of Adkins, who was the non-moving party.
[2] Prior to April 2001 another employee had transported periodicals to and from the retail stores, and Adkins merely had serviced the stores by displaying the new materials and removing the older ones.
[3] Adkins could not recall which of the two men spoke to her on this occasion.
[4] Although dock hands loaded Adkins' truck each morning, her work required her to unload and reload throughout the day as she dropped off and picked up periodicals.