ZINK et al., Appellants,

v.

OWENS–CORNING FIBERGLAS CORPORATION et al., Appellees.

[Cite as *Zink v. Owens–Corning Fiberglas Corp.* (1989), 65 Ohio App.3d 637.]

Court of Appeals of Ohio,
Lucas County.

No. L–88–413.

Decided Dec. 15, 1989.

William Bartle, for appellants.

Ronald S. Moening and Willis P. Jones, Jr., for appellees.

Per Curiam.

This case is before the court on appeal from the Lucas County Court of Common Pleas.

Appellant, Richard G. Zink, was employed as a truck driver for appellee, AIRCO Industrial Gases. His main duty was to deliver liquid oxygen and nitrogen to various facilities. One of AIRCO's customers was appellee, the Owens–Corning Fiberglas Corporation ("Owens–Corning"). On March 17, 1984, Zink was injured when he was delivering liquid nitrogen to Owens–Corning's Granville, Ohio plant. Zink's own records of that delivery show that he attempted to pump approximately thirteen hundred gallons of liquid nitrogen into a five-hundred-fifty-gallon Owens–Corning tank.

Richard G. Zink and his wife, Sharon R. Zink, filed a complaint on February 14, 1986, seeking relief from the BOC Group, Inc. ("AIRCO") and Owens–Corning. Zink alleged that AIRCO was liable for an intentional tort and that Owens–Corning had breached its duty under contract and its duty to provide a safe workplace for independent contractors.

Both appellees filed independent motions for summary judgment. The court granted each of these motions on May 11, 1988 and November 29, 1988, respectively. The Zinks appealed both of these decisions, setting forth the following assignments of error:

"A. The trial court erred in granting defendant, Owens–Corning Fiberglas Corporation's, motion for summary judgment in its May 11, 1988 opinion and judgment entry since:

"1. Defendant, Owens–Corning Fiberglas Corporation, had a contractual duty to provide a safe site for the delivery and storage of liquid nitrogen, the breach of which proximately caused plaintiff, Richard Zink's, injuries.

"2. Defendant, Owens–Corning Fiberglas Corporation, had a contractual duty to warn any third parties on its premises of all hazards to persons in any way associated with the product, its storage, distribution, or use, the breach of which proximately caused plaintiff, Richard Zink's, injuries.

"B. The trial court erred in granting defendant, AIRCO Industrial Gases', motion for summary judgment in its November 29, 1988 opinion and judgment entry."

We find the well-reasoned decisions of Judge William J. Skow to be dispositive of the major issues in this cause. For that reason, the judgments are hereby affirmed and adopted as our own.[1] See Appendix A and Appendix B. Accordingly, appellant's first and second assignments of error are found not well taken.

On consideration whereof, this court finds substantial justice has been done the parties complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal assessed to appellants.

*Judgment affirmed.*

HANDWORK, P.J., CONNORS and GLASSER, JJ., concur.

---

**1.** Appellants filed a reply brief on March 13, 1989, arguing that this court should not consider the stipulations filed in the trial court by appellees on September 4, 1987. However, the record shows that appellants failed to object to the stipulations below and, thus, have waived their right to raise the issue in this court.

**640**

Filed May 11, 1988

WILLIAM J. SKOW, Judge.

This cause is before the Court on a motion for summary judgment of defendant Owens–Corning Fiberglas Corporation ("Owens–Corning"). Upon due consideration of the applicable law, facts and memoranda of counsel, this Court finds the motion well taken.

The facts of this case are as follows. In 1981, Owens–Corning contracted with AIRCO Industrial Gases ("AIRCO") for the purposes of purchasing liquid nitrogen and leasing two liquid nitrogen storage tanks. As part of the contract, AIRCO furnished and installed the tanks on Owens–Corning property. Further, AIRCO was obliged to maintain the tanks and appurtenant equipment. Owens–Corning agreed to provide a safe site for the tanks and also agreed to warn its employees and any third parties on the Owens–Corning premises of the hazards associated with liquid nitrogen.

Plaintiff Richard G. Zink was employed by AIRCO to deliver liquid nitrogen to AIRCO's customers. On March 17, 1984, Zink made a delivery of liquid nitrogen to the two tanks located at Owens–Corning. Zink filled the first storage tank without incident. While pumping the liquid from his truck into the second storage tank, Zink noticed his feet felt cold. He turned off the pump and realized he had been standing in liquid nitrogen. Zink's trip report and shipping order indicate that he attempted to pump approximately thirteen hundred gallons of liquid nitrogen into the five-hundred-fifty-gallon storage tank. However, there are also allegations that the storage tank overflow lines were incorrectly positioned on the storage tanks.

The following day, Zink's feet began burning, allegedly as a result of standing in the liquid nitrogen. He suffered injury to his feet and subsequently filed the present suit against Owens–Corning and other defendants.

The issue before the Court is whether Owens–Corning is liable for a breach of duty owed to Zink.

It is well-settled law in Ohio that a landowner has a duty to provide a safe place of employment, for an independent contractor and an independent contractor's employees, in areas under the landowner's control. *Bosjnak v. Superior Sheet Steel Co.* (1945), 145 Ohio St. 538, 31 O.O. 188, 62 N.E.2d 305. Further, the landowner may be liable to injured employees of an independent contractor if the landowner actively participates in the details of the contractor's work. *Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St.3d 206, 6 OBR 259, 452 N.E.2d 326.

APPENDIX A—Continued

■ In the present case, the alleged causes of Zink's injuries are twofold: (1) the storage tank overflow lines were positioned incorrectly, and (2) there were no warning signs on the storage tanks instructing Zink of the dangers of liquid nitrogen and of the proper procedures to be followed in case of contact with liquid nitrogen. Zink argues that *Walker v. Mid–States Terminal, Inc.* (1984), 17 Ohio App.3d 19, 17 OBR 71, 477 N.E.2d 1160, created a duty owed by Owens–Corning to Zink regarding both of these alleged causes. In *Walker*, the court found that, by virtue of the contractual relationship between the landowner and independent contractor, an issue of fact was created as to whether the landowner retained custody and control over dangerous equipment used at the construction site on the landowner's property. *Id.* at 22, 17 OBR at 76, 477 N.E.2d at 1163. The landowner in *Walker* specifically reserved the right to inspect and test all material and equipment used by the independent contractor. Further, the landowner reserved the right to change the methods or tools used by the independent contractor. *Id.* at 21–22, 17 OBR at 74, 477 N.E.2d at 1163.

In the present case, the contractual relationship between AIRCO and Owens–Corning is very different from that in the *Walker* case. The only contractual responsibilities undertaken by Owens–Corning are (1) to provide a proper site on its property for the storage tanks, and (2) to warn Owens–Corning employees and third parties of the dangers of liquid nitrogen.

The contract between AIRCO and Owens–Corning imposes no duty on Owens–Corning to insure the proper positioning of the overflow lines on the storage tanks. It is undisputed that AIRCO owned the storage tanks. Further, it is undisputed that AIRCO was responsible for installing and maintaining the storage tanks. There has been no evidence presented to suggest that Owens–Corning was responsible for the alleged improper positioning of the overflow lines or had knowledge of such. Therefore, as a matter of law, this Court finds that Owens–Corning owed no duty to Zink regarding the safe placement of the overflow pipes.

■ Further, Owens–Corning owed no duty to Zink in regard to warnings and safety instructions on the storage tanks. In its contract with AIRCO, Owens–Corning did assume the responsibility of warning its own employees and third parties of the dangers of liquid nitrogen. However, this Court does not find that such a contractual responsibility to warn extended to AIRCO employees. AIRCO, as a party to the contract with Owens–Corning, is not a "third party" for which Owens–Corning must provide warnings. This Court finds Owens–Corning had no duty to provide warnings to Zink.

APPENDIX A—Continued

Therefore, this Court grants Owens–Corning's motion for summary judgment.

*So ordered.*

## APPENDIX B

### Filed Nov. 29, 1988

WILLIAM J. SKOW, Judge.

This cause is before the Court on a motion for summary judgment of defendants BOC Group, Inc. ("BOC") and AIRCO Industrial Gases, Division of BOC ("AIRCO"). Upon due consideration of the applicable law, facts and memoranda of counsel, this Court finds the motion well taken.

The pertinent facts of the case are as follows. On March 17, 1984, plaintiff Richard G. Zink, an employee of AIRCO, was delivering liquid nitrogen to the Owens–Corning Fiberglas Corporation ("Owens–Corning") in Granville, Ohio. While Zink was pumping the liquid nitrogen into the storage tank on Owens–Corning's premises, the liquid nitrogen came out of the tank and flowed under his feet. According to AIRCO records, the tank was overfilled.

As a result of the contact with the liquid nitrogen, Zink suffered injury to this feet. Subsequently, Zink filed the present intentional tort action against his employer AIRCO as a division of BOC.

Zink has alleged that when AIRCO installed the storage tank on Owens–Corning's premises, the overflow lines on the storage tank were improperly placed in a direction towards where an operator would have to stand while filling the tank, as opposed to away from the operator. Further, AIRCO failed to advise Owens–Corning, the builder of the pad upon which the storage tank sat, to slope the pad away from where an operator would stand. Zink argues that such violations of safety regulations constitute an intentional tort on behalf of his employer.

In *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, syllabus, certiorari denied (1982), 459 U.S. 857 [103 S.Ct. 127, 74 L.Ed.2d 110], the court held that Ohio's workers' compensation law did not bar an employee from suing his or her employer for an intentional tort. In *Jones v. VIP Development Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, paragraph one of the syllabus, the court defined an intentional tort as "[a]n act committed with the intent to injure another, or committed with the belief that such injury is *substantially certain* to occur." (Emphasis added.)

APPENDIX B—Continued

The court further defined knowledge to a substantial certainty by promulgating a three-part test in *Van Fossen v. Babcock & Wilcox* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489.[1] The *Van Fossen* court held that the following must be demonstrated to show an employer's knowledge to a substantial certainty:

"(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality, or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty, and not just a high risk; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Id.* at paragraph five of the syllabus.

In explaining the type of conduct that constitutes an intentional tort, the *Van Fossen* court stated:

"There are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, in view of the overall purposes of our Workers' Compensation Act, such conduct should not be classified as an 'intentional tort' and therefore an exception, under *Blankenship* or *Jones*, to the exclusivity of the Act." *Id.*, 36 Ohio St.3d at 117, 522 N.E.2d at 504–505.

In the present case, the evidence does not support a finding that AIRCO knew to a substantial certainty that Zink would be injured while pumping liquid nitrogen. AIRCO provided new employees safety training programs which Zink participated in. Such employees were instructed on the precautions necessary when dealing with liquid nitrogen and were instructed to wear protective clothing. Robert E. Young, distribution superintendent and employee of AIRCO since 1957, has testified that he is not aware of any other accident in the history of AIRCO where an employee was injured, as was Zink, by contact with liquid nitrogen. Further, Zink has testified that in his one and a half years with AIRCO he was not aware of any other drivers who had been injured by liquid nitrogen.

---

**1.** It should further be noted that the *Van Fossen* court held that the new definition of "substantially certain" as "deliberate intent" under R.C. 4121.80(C)(1) may not be retroactively applied to a cause of action which accrued prior to August 22, 1986. Because the present action accrued prior to August 22, 1986, the "substantially certain" test of *Van Fossen* shall be applied.

APPENDIX B—Continued

The basis of plaintiff's claim herein is that the overflow lines and the pad upon which the storage tanks sat had been improperly installed. That proposition is dubious, but arguable, and were the Court dealing with an issue of simple negligence or even gross negligence or wantonness, summary judgment would have to be denied, notwithstanding the sketchy claim and the plaintiff's own conduct. But, as the *Van Fossen* court makes clear, intentional tort imposes a significantly higher standard than even gross negligence or wantonness. Here, based upon the historical safety record and the virtual lack of evidence of fault on the part of the employer, there has been a total failure to attain, even theoretically, the daunting standard of substantial certainty and intentional tort.

Indeed, construing the evidence most strongly in favor of the plaintiff, reasonable minds could only conclude that neither AIRCO nor BOC had knowledge to a substantial certainty that the positioning of the lines or tanks would cause harm to Zink or one similarly situated. Accordingly, summary judgment must be granted.

*So ordered.*