99 F.3d 1139
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Avundia T. RODRIGUEZ, Plaintiff-Appellant,
v.
SUN COMPANY, INC. (R & M), Defendant-Appellee.
 No. 95-3869.
 United States Court of Appeals, Sixth Circuit.
 Oct. 15, 1996.
 
 Before: SUHRHEINRICH and MOORE, Circuit Judges, and McKINLEY, District Judge.*
 OPINION
 MOORE, Circuit Judge.
 
 
 1
 Plaintiff-appellant Avundia T. Rodriguez appeals the summary judgment for defendant-appellee Sun Company in this diversity case involving the intersection of Ohio workers' compensation law and Ohio tort law. Because she has not presented sufficient evidence to support a finding of liability for intentional torts, we affirm the district court's grant of summary judgment.
 
 
 2
 * Rodriguez sustained severe burn injuries to her face and hands in a flash fire of butane gas vapors at Sun's Toledo oil refinery on December 29, 1990. At that time, she was one of four fire marshals employed in the refinery fire department. She had been trained in fire protection, fire safety, and hazardous materials emergencies. Joint Appendix (J.A.) at 98, 722-25.
 
 
 3
 On the night of Rodriguez's injury, the systems in the refinery's Plant 8, the alkylation unit, had become overheated and overpressurized due to a power failure. When operators restarted the unit, they failed to follow established procedures, triggering a series of events that led to a release of butane through the vent stack into the atmosphere at approximately 9:00 p.m. J.A. at 311-15. A release of butane into the atmosphere creates a severe fire hazard. Vaporized butane expands to 270 times its liquid volume. Because it is twice as heavy as air, the gas descends and forms a cloud on the ground that is highly flammable. Butane vapors can be ignited by many sources, including motor vehicles.
 
 
 4
 After the butane release, William K. Rainey, Sr., the refinery fire chief, was called in from home. He arrived at the refinery at 9:42, consulted Plant 8 control room personnel, and declared a fire standby. J.A. at 315, 519-20. Rainey and Rodriguez put on their "turnout gear," which consisted of inner and outer protective coveralls, boots, helmet, safety glasses, gloves, and hood, all designed for fire protection; Rodriguez, however, then took off her hood while trying to start a fire pumper and forgot to take it with her when she took a different truck. Id. at 714-15. While Rodriguez obtained the fire truck, Rainey discussed the situation with the chief operator at Plant 8, Raul "Joe" Gloria, who told Rainey that butane was no longer being released, though the plant continued to experience high pressure and had the potential for another release.
 
 
 5
 After speaking with Gloria, Rainey instructed Rodriguez to park the pumper on a road passing northwest of Plant 8, about 120 feet from the vent stack. Although the road had been barricaded to keep out vehicular traffic, Rainey testified at his deposition that he chose that location because there was a hydrant by the road and because the spot was then out of the line of the wind blowing over the vent stack.[1] J.A. at 520-22. He told Rodriguez to lay a hose to the hydrant, but not to hook it up, so the truck would remain mobile and able to respond to any other location. Id. at 522-23. He also instructed her to stay with the truck, which was still running. Rodriguez told Rainey that she smelled butane in the area and that she thought the truck should be located farther from the vent stack. Rainey chose not to move the truck. Id. at 745-46.
 
 
 6
 Rainey stayed at the pumper with Rodriguez for at least twenty minutes over the next hour, leaving several times to check with Gloria as to the situation. J.A. at 752. At about 10:40 p.m., the radio dispatcher asked Rainey to go to the plant protection area of the refinery to evaluate a gaseous odor that had been detected. J.A. at 315. When he arrived there at approximately 10:45, he saw a visible cloud of butane moving south. Id. at 532-33. He ordered the area barricaded. Id. at 534. As he headed back to Rodriguez's position, he saw the flash fire that injured Rodriguez.
 
 
 7
 Waiting by the pumper, Rodriguez had heard the engine accelerating "up and down," probably because the engine was pulling in butane vapor from the air. J.A. at 401, 461-62, 765-66. She entered the cab of the truck, leaving the driver's side door ajar, and removed her gloves to work the controls. Id. at 315-16, 766-67. The engine then died, followed by an explosion that blew Rodriguez from the cab. Id. at 316, 766-70. As she got to her feet, she was engulfed by a large flash fire that severely burned her hands and part of her face. Id. at 771. Rodriguez produced an expert who concluded that it was "likely that the fire truck was the ignition source for the vapor cloud." J.A. at 400.
 
 
 8
 Prior to December 29, 1990, the Plant 8 system had released butane into the atmosphere at least four times in three years, including once each in October and November 1990. J.A. at 353. Company documents indicate that Sun was aware of the potential hazards posed by such releases, and was also aware of alternatives to its venting system. See, e.g., id. at 352, 359, 368, 373, 374. Prior to December 29, 1990, the refinery had experienced no fires or explosions resulting from the previous butane releases.
 
 II
 
 9
 We review a district court's grant of summary judgment de novo. Hankins v. The Gap, Inc., 84 F.3d 797, 800 (6th Cir.1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Considering all facts and inferences drawn therefrom in the light most favorable to the appellant, we reverse the grant of summary judgment only upon a material error of law or a showing of the existence of a genuine issue of material fact. Hankins, 84 F.3d at 800 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).
 
 
 10
 The exclusivity-of-remedy rule under Ohio's workers' compensation law limits an employee's tort remedies against her employer to intentional torts. See generally Van Fossen v. Babcock & Wilcox Co., 522 N.E.2d 489, 499-502 (Ohio 1988). To prevail in a workplace intentional tort case under Ohio law, a plaintiff must demonstrate:
 
 
 11
 (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
 
 
 12
 Fyffe v. Jeno's, Inc., 570 N.E.2d 1108, 1109 (Ohio 1991) (syllabus para. 1) (modifying the test set out in Van Fossen, 522 N.E.2d at 491 (syllabus para. 5)).[2]
 
 
 13
 The substantial certainty standard is "a significantly higher standard than even gross negligence or wantonness." Zink v. Owens-Corning Fiberglas Corp., 584 N.E.2d 1303, 1308 (Ohio Ct.App.1989). The Ohio Supreme Court has emphasized that "proof beyond that required to prove negligence and beyond that required to prove recklessness must be established.... [T]he mere knowledge and appreciation of a risk--something short of a substantial certainty--is not intent." Fyffe, 570 N.E.2d at 1110 (syllabus para. 2) (modifying Van Fossen, 522 N.E.2d at 491-92 (syllabus para. 6) (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 8, at 36 (5th ed. 1984))). A "plethora of negligence" is not sufficient to impose liability. Wehri v. Countrymark, Inc., 612 N.E.2d 791, 793 (Ohio Ct.App.1992). Even knowledge of "great risk" is not enough. Howard v. Columbus Prods. Co., 611 N.E.2d 480, 484 (Ohio Ct.App.1992).
 
 
 14
 The Fyffe rule imposes a "harsh test," a "daunting standard." Goodwin v. Karlshamns USA, Inc., 619 N.E.2d 508, 513 (Ohio Ct.App.1993); Zink, 584 N.E.2d at 1308, respectively. Intentional tort liability for workplace injuries is "limited to egregious cases." Richie v. Rogers Cartage Co., 626 N.E.2d 1012, 1016 (Ohio Ct.App.1993); see also Sanek v. Duracote Corp., 539 N.E.2d 1114, 1117 (Ohio 1989).
 
 
 15
 * Rodriguez contends that Sun maintained a venting process for handling excess hydrocarbons that it knew created extremely hazardous conditions, that Sun knew there was a substantial certainty of injury to its employees arising from those conditions, and that Sun nevertheless continued to use the venting process.
 
 
 16
 Rodriguez points to internal documents in which Sun appeared to acknowledge the dangerous conditions created by its venting process. See, e.g., J.A. at 352, 359, 368, 373, 374. Though the documents clearly demonstrate Sun's awareness of potential danger to its employees and a need to modify its system, they do not show that Sun's awareness rose to a level of "substantial certainty" that the potential consequences would materialize.
 
 
 17
 Rodriguez's expert evidence also is not sufficient to support a finding that a flash fire resulting in injury was substantially certain to occur, or that Sun knew it to be substantially certain. Rodriguez's expert stated his conclusions in terms only of possibilities and of what Sun should have known and done. See J.A. at 385-87.
 
 
 18
 Although the absence of prior fires or explosions is not dispositive of the issue of substantial certainty, it "certainly assists in showing knowledge of a substantial certainty of harm on the part of the employer." Cook v. Cleveland Elec. Illuminating Co., 657 N.E.2d 356, 364 (Ohio Ct.App.1995). Given that Sun had experienced a number of releases of butane from the vent stack without any ignitions, the objective probability of a fire occurring appears to be, while perhaps a strong possibility, not a substantial certainty; at a minimum, the absence of previous ignitions detracts from Rodriguez's contention that Sun knew that an ignition was substantially certain to occur.
 
 
 19
 Rodriguez further contends that Sun failed to provide adequate protective gear, knowing that an employee coming into direct contact with a fire or explosion without protective gear would be substantially certain to be injured. She alleges that Rainey was responsible for the absence of her protective hood, and that his failure to provide additional helpers at the standby necessitated her taking off her protective gloves to work the controls of the pumper. Rodriguez, however, has produced no evidence that anyone other than herself was responsible for her failure to wear her hood and gloves. Furthermore, she still must prove that Sun knew that a fire or explosion was substantially certain to occur. To hold that a defendant could be held liable based on the substantial certainty of injury if an employee were exposed to fire without requiring proof of substantial certainty of the fire or explosion itself would be to hold employers in inherently hazardous industries in effect strictly liable in tort for virtually any accident. Such a rule would invite any employees in hazardous industries who sustained injuries in the workplace to sue for intentional torts. This would stretch the exception to the exclusivity-of-remedy rule too far.
 
 
 20
 Rodriguez also seeks to hold Sun liable for the conduct of William Rainey in positioning her for the standby. She contends that Rainey knew that butane vapors were in the area, that he knew that stationing Rodriguez in the area with a running motor vehicle was substantially certain to harm her, and that he required her to stay with the truck under those circumstances.[3] She does not dispute Rainey's testimony that Joe Gloria had told him that the plant was no longer releasing butane. Even if the plant was in fact leaking or releasing continuously, as Rodriguez testified, she has not demonstrated that Rainey knew that it was.
 
 
 21
 Rodriguez also has not shown that Rainey knew that ignition by the pumper of a flash fire that would injure the plaintiff was substantially certain to occur. She presents no evidence that Rainey knew that concentrated vapors would come into contact with the truck, or that the truck would ignite the butane. While the risk of such an occurrence may have been great, as her expert stated, Rodriguez has not shown that Rainey knew it to be so probable as to be substantially certain.
 
 
 22
 We believe it significant that Rainey was with Rodriguez at the pumper for at least one-third of the hour. We agree with the district court that it is illogical to believe that Rainey would have positioned himself in a location where he knew a flash fire or explosion was substantially certain to occur. See Wehri v. Countrymark, Inc., 612 N.E.2d 791, 793, 794 (Ohio Ct.App.1992). If an explosion was substantially certain to occur at some point, every minute he spent at the pumper was a hazard to himself.
 
 
 23
 Rodriguez has not presented evidence of conduct so egregious as to fall under the narrow exception to the workers' compensation statute. Accordingly, we AFFIRM the grant of summary judgment for the defendant.
 
 
 
 *
 The Honorable Joseph H. McKinley, Jr., United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 The wind was then blowing from the northwest; it later changed direction, blowing the butane cloud that ignited and injured Rodriguez
 
 
 [2]
 "The syllabus of a[n Ohio] Supreme Court opinion states the controlling point or points of law decided in and necessarily arising from the facts of the specific case before the Court for adjudication." Ohio Supreme Court Rules for the Reporting of Opinions Rule 1(B) (1995). See also Grover v. Eli Lilly and Co., 33 F.3d 716, 717 n. 1 (6th Cir.1994) ("In Ohio Supreme Court opinions, the syllabus contains the law of the case.") (citing Donahey v. Edmondson, 105 N.E. 269, 273 (Ohio 1913))
 
 
 [3]
 The District Court noted that whether Sun could be held vicariously liable for the alleged intentional acts of its supervising employee appeared to be an issue of first impression in Ohio. Because we affirm summary judgment for the defendant, we need not address this issue