OPINION
{¶ 1} Plaintiff-appellant Lonnie Russell appeals the June 9, 2003 Judgment Entry entered by the Delaware County Court of Common Pleas, granting summary judgment in favor of defendant-appellee the Nippert Company ("Nippert").
 STATEMENT OF THE FACTS AND CASE {¶ 2} In January, 1997, Nippert hired appellant as a machine helper in its Delaware, Ohio copper wire manufacturing facility. Appellant advanced to the position of machine operator and subsequently received a reassignment to a caster operator. Following a four to six week training period, appellant began operating caster machines on his own.
 {¶ 3} Appellant reported to work at 7:00 p.m. on September 29, 1998, for his usual twelve-hour shift. As of this date, appellant had been operating the casting machine on his own for approximately one month. At approximately 6:00 or 7:00 a.m. on the morning of September 30, 1998, a coworker informed appellant that a strand had pulled. The casting machines produce or "run" copper wire or "strand." A run of strand begins when an employee loads a copper cathode into a furnace, which heats and ultimately melts the cathode. The resultant molten copper reaches temperatures approximately 1800° to 2000° F. The molten copper is transferred into a casting machine where the caster operator lowers cooling tubes below a layer of graphite and into the molten copper. The casting machine draws the molten copper into and through an inner tube while cold water is pumped into and circulated around a larger outside tube. The molten copper drawn through the cooling tubes eventually forms a strand of copper wire.
 {¶ 4} In order to remedy a pull, which occurs when a strand separates during the run process, the caster operator must determine if it necessary to rebuild the effected cooling tube. The caster operator must raise the cooling tube from the copper melt, lock the cooler into its raised position, and wait no less than five minutes while the water circulating through the outer cooling tube cools any molten copper still inside the inner cooling tube. After this cooling procedure, the caster operator disconnects the water supply to the cooling system and determines if he must rebuild the cooler. It is imperative the water and copper do not mix.
 {¶ 5} After learning a pull occurred, appellant checked the layer of graphite covering the molten copper for signs of bubbling, which is indicative of water leaking into the molten copper. As he observed no bubbling, and he felt the hoses, supplying the water to the cooling system were cold to the touch, appellant discontinued the water supply and disconnected the water hoses from the cooling tubes. Appellant raised the effected cooling tube from the melt and locked the cooler into its raised position. Thereupon, an explosion occurred, spraying a mixture of molten copper, water, and steam onto appellant. Appellant suffered burns of varying degrees over his head, face, neck, arms, and upper torso.
 {¶ 6} On December 27, 2000, appellant filed a Complaint against Nippert in the Delaware County Court of Common Pleas for an intentional tort. The complaint was a refiling of a previously dismissed case. The matter proceeded throught the discovery process. Nippert filed a Motion for Summary Judgment on February 5, 2003. Appellant filed a Memorandum in Opposition thereto. Via Judgment Entry filed June 9, 2003, the trial court granted summary judgment in favor of Nippert, finding appellant could not establish Nippert knew with a substantial certainty appellant would be harmed.
 {¶ 7} It is from this judgment entry appellant appeals, raising as his sole assignment of error:
 {¶ 8} "I. The common pleas court of Delaware County, Ohio erred to the substantial prejudice of plaintiff-appellant Lonnie Russell by granting defendant-appellee the Nippert Company's motion for summary judgment"
 {¶ 9} This case comes to us on the accelerated calendar. App.R. 11.1, which governs accelerated calendar cases, provides, in pertinent part:
 {¶ 10} "(E) Determination and judgment on appeal.
 {¶ 11} "The appeal will be determined as provided by App.R. 11.1. It shall be sufficient compliance with App.R. 12(A) for the statement of the reason for the court=s decision as to each error to be in brief and conclusionary form.
 {¶ 12} "The decision may be by judgment entry in which case it will not be published in any form."
 {¶ 13} This appeal shall be considered in accordance with the aforementioned rule.
 I {¶ 14} Herein, appellant maintains the trial court erred in granting summary judgment in favor of Nippert.
 {¶ 15} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36.
 {¶ 16} Civ.R. 56(C) states, in pertinent part:
 {¶ 17} "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 18} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citing Dresher v.Burt (1996), 75 Ohio St.3d 280.
 {¶ 19} It is based upon this standard we review appellant=s assignment of error.
 {¶ 20} In Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, the Ohio Supreme Court set forth a three part test to establish an employer intentional tort. First, the employee must prove the employer had knowledge of the existence of a dangerous process, procedure, instrumentality, or condition within its business operation. Id. Second, the employer must have knowledge if the employee is subjected by the employment to such dangerous process, procedure, instrumentality, or condition, then harm to the employee will be a substantial certainty. Id. Third, the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. Id. The substantial-certainty standard in employer intentional tort cause of action is "a significantly higher standard than even gross negligence or wantonness." Zink v. Owens-Corning FiberglasCorp. (1989), 65 Ohio App.3d 637.
 {¶ 21} The undisputed evidence establishes appellant failed to use the proper procedure for conducting inspections and performing maintenance on the cooling tubes, despite the fact he knew the procedure and was trained appropriately. As a result, appellant is unable to establish Nippert knew with substantial certainty appellant would be harmed during this process. Because appellant cannot establish all three prongs of the Fyffe test, we find the trial court did not err in granting summary judgment in favor of Nippert.
 {¶ 22} Appellant's sole assignment of error is overruled.
 {¶ 23} The judgment of the Delaware County Court of Common Pleas is affirmed.