OPINION
{¶ 1} Plaintiff-Appellant Bret Sanor appeals from the December 14, 2004, Judgment Entry of the Stark County Court of Common Pleas which granted summary judgment in favor of Defendants-Appellees Sancap Abrasives, Inc. and Lexington Abrasives, Inc.'s.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On October 10, 2002, Plaintiff-Appellant Bret Sanor was an employee of Defendant-Appellee Sancap Abrasives, Inc. Sancap Abrasives, Inc. (Sancap) is a manufacturer of sandpaper. Appellant had worked at Sancap since August, 2001. Prior to this date, Appellant had been employed with Marlboro Manufacturing as an assembler and a punch machine operator. (Sanor Depo. at 20-21). The press he worked on had a light curtain and emergency stop buttons. Id. at 26.
 {¶ 3} Prior to the date of the accident in this case, Appellant had worked in the following positions for Sancap: general laborer, stick tender, sand work, grain man helper, forklift operator, adhesives formulator, sizer machine operator and take-down winder. (Sanor Depo. at 35-36, 59, 62, 65, 67, 69). The take-down winder was equipped with the following safety devices: a trip wire near the end of the machine, by the roll, which prevents the machine from being started if the wire is too taut or too loose and which stops the machine if the operator raises his foot; two emergency stops (e-stops) at the front of the machine and two on the rear; and an electric eye located about two feet above the roll in the spindle area which would stop the machine if the light beam was broken.
 {¶ 4} Appellant's training on the take-down winder lasted for a month. (Id. at 70). He was trained by Kevin DiFloure, the regular take-down winder operator at Sancap.
 {¶ 5} On the date of the accident, Appellant was operating the take-down winder. The take-down winder is a large machine which winds sandpaper onto a steel core after it leaves an oven. Id. at 70. The take-down winder is located at the end of the manufacturing process. According to the plant manager, Daniel Stetzer, the take-down winder operator is "responsible for starting material on the core, winding it until the core is full, removing the core and starting a new one, and also maintaining the records that you have to do for that position.
 {¶ 6} The speed of the take-down winder is controlled by a potentiometer located on a control panel away from the area where the material is wound onto the rolls. At its lowest setting, the potentiometer rotates at approximately five revolutions per minute. (Affidavit of Richard Hayes, No. 4). When the take-down winder is first started, it is to be set at this lowest speed until the material is started on the core.
 {¶ 7} The take-down winder has an in-running nip point located where the material meets the steel core. (Stetzer Depo. at 52). In order to get the material started in the roll, the operator must wrap the material over the steel core and tuck it under a flap on the core known as the "tongue" which operates as a friction point so the material can be held in place without the operator needing to place his hands directly on the material. (Adams depo. at 36-37). The operator must then hold onto the tongue with his left hand while pushing the start button, which is located on a swinging control arm, is depressed with his right hand, which starts the rotation of the core and the initial take-up of the sandpaper on the core. (Id.) The operator is then required to walk to the potentiometer to increase the speed of the winder to approximately 100 feet per minute. (Id. at 38-39).
 {¶ 8} On October 10, 2002, Appellant was injured when his left hand and arm became caught in the in-running nip while he was operating the take-down winder. On this day, Appellant was running a heavy grit paper backed on a canvas material known as "mean green". (Sanor Depo. at 109). Because of the coarseness of the grit, Appellant wore gloves "because the material . . . was very coarse and would rip [his] thumbs open." (Id. at 94-96). According to Appellant, he was having difficulty starting the heavy material on the roll because the material kept sliding. Id. In order to keep the material from sliding on the roll, Appellant placed both of his hands on the material to apply extra pressure. Appellant's left hand became caught between the roll (core) and the material. Appellant stated that when he could not pull his left hand free, he attempted to break the electric light beam with his right hand but was unable to reach it, nor was he able to reach the e-stop. (Id. at 124-128). He further testified that he tried to pull the trip wire with his right foot but that it failed to stop the machine. (Id. at 126).
 {¶ 9} According to Appellant, neither the light beam nor the trip wire had ever malfunctioned prior to this incident. (Id. at 127). The machine stopped after the breaker was blown. (Id. at 223-224).
 {¶ 10} Appellant sustained bilateral leg fractures, facial injuries and a fractured arm.
 {¶ 11} On October 16, 2003, Plaintiff-appellant filed a Complaint against Sancap Abrasives, Inc., et al. alleging workplace intentional tort.
 {¶ 12} On or about October 28, 2004, Defendants-Appellees filed a Motion for Summary Judgment.
 {¶ 13} On December 14, 2004, the trial court granted Defendants-Appellees' Motion for Summary Judgment.
 {¶ 14} Thus, it is from this Judgment Entry that Appellant now appeals, raising the following sole assignment of error:
 ASSIGNMENT OF ERROR {¶ 15} "I. The trial court erred in granting appellee's motion for summary judgment on appellant's workplace intentional tort as there exists genuine issues of material fact which the trial court failed to construe in favor of appellant."
 {¶ 16} SUMMARY JUDGMENT
 {¶ 17} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. Civ.R. 56(C) provides, in pertinent part:
 {¶ 18} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 19} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citingDresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107.
 {¶ 20} It is based upon this standard that we review appellant's assignments of error.
 I. {¶ 21} In Appellant's assignment of error, appellant contends that the trial court erred when it granted Appellees' Motion for Summary Judgment. We disagree.
 {¶ 22} The controlling test on employer intentional tort is set forth in Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus:
 {¶ 23} "Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser Keeton on Torts (5 Ed. 1984), in order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated:
 {¶ 24} "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;
 {¶ 25} "(2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and
 {¶ 26} "(3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (Van Fossen v. Babcock Wilcox Co. (1988),36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained.)"
 {¶ 27} There is an extremely high burden of proof to establish an intentional tort of an employer. As stated by the Court in Fyffe: "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk-something short of substantial certainty-is not intent." Id. at paragraph 2 of the syllabus.
 {¶ 28} The substantial certainty standard in an employer intentional tort cause of action is "a significantly higher standard than even gross negligence or wantonness." Zink v. Owens-Corning Fiberglas Corp. (1989),65 Ohio App.3d 637. The mere knowledge and appreciation of a risk or hazard, something short of substantial certainty, is not intent.
 {¶ 29} Appellant, in support of his claim and in its opposition to Appellees' Motion for Summary Judgment, presented the following deposition testimony of fellow employees of Sancap Abrasives, Inc.
 {¶ 30} Steve Adams, foreman: stated that there are risks with nip points whether an operator is wearing gloves or not wearing gloves. (Adams depo. at 43).
 {¶ 31} Kevin DiFloure, take-down winder operator: stated that if the operator is not steady, the machine will "grab you". (DiFloure depo. at 49).
 {¶ 32} Based upon the rule that the facts must be construed in favor of the non-moving party, these facts averred in these affidavits are accepted as true.
 {¶ 33} In his testimony, Steve Adams also stated:
 {¶ 34} "3. The Plaintiff, Bret Sanor, never brought to my attention any safety concern that he allegedly had in regards to the take down winder that he was working with at the time of the accident,"
 {¶ 35} "4. Prior to this accident, Sancap Abrasives, Inc., did not have notice of any problems with the light curtain safety device or the trip wire safety device that allegedly malfunctioned, nor was Sancap Abrasives, Inc., aware of any danger to Plaintiff Bret Sanor, or any other employee from using the take-down winder."
 {¶ 36} Additionally, Steve Adams gave the following deposition testimony:
 {¶ 37} "Q. Can you think of any reason why you would have both of your hands on the core or on the material while it's running?
 {¶ 38} * * *
 {¶ 39} "A. No.
 {¶ 40} "Q. Absolutely no reason?
 {¶ 41} "A. None
 {¶ 42} "Q. Have you ever observed any other employee doing that?
 {¶ 43} "A. While it's running?
 {¶ 44} "Q. Yes.
 {¶ 45} "A. No."
 {¶ 46} Based on the above these facts, we find that Appellant has failed to produce evidence to establish the second prong of the Fyffe
test. Appellant had been trained as an operator of this particular machine and was knowledgeable about the take-down winder and its safety devices. He testified that he never saw the trip wire or the light beam malfunction nor knew of any instance when these devices had ever failed. (Sanor Depo. at 127). There had been no previous accidents on the take-down winder. The record is devoid of any knowledge by the employer that having appellant operate the take-down winder would cause "harm" to him with "substantial certainty." At best, Appellees may have been negligent, however, negligence is not the test for an intentional tort.
 {¶ 47} Based upon the above, we conclude appellant failed to establish Appellees had actual knowledge that injury to appellant was a substantial certainty as required by Fyffe, supra.
 {¶ 48} Due to our disposition of the second Fyffe requirement, we find it unnecessary to address the first and third requirements.
 {¶ 49} Accordingly, appellant's assignments of error are overruled.
 {¶ 50} The judgment of the Stark County Court of Common Pleas is affirmed.
Boggins, P.J. Hoffman, J. and Farmer, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.