**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0695n.06

**No. 09-3327**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Oct 22, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| **TIMOTHY L. ULRICK, et al.,** | ) | |
| | ) | ON APPEAL FROM THE |
| **Plaintiffs-Appellants,** | ) | UNITED STATES DISTRICT |
| | ) | C O U R T   F O R   T H E |
| **v.** | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| **NORM KUNZ** | ) | |
| | ) | O P I N I O N |
| **Defendant,** | ) | |
| | ) | |
| **AHAL CONTRACTING COMPANY, INC.,** | ) | |
| | ) | |
| **Defendant-Appellee.** | ) | |

BEFORE:    DAUGHTREY, SUTTON,  and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.**   Together with his family, Timothy Ulrick, a carpenter attacked by Norm Kunz, a labor supervisor working for their joint employer, Ahal Contracting Co., brought a claim of employer intentional tort against Ahal.  The district court granted Ahal's motion for summary judgment after finding that the Ulricks had failed to demonstrate that Ahal was "substantially certain" that Kunz would injure anyone, and so had failed to demonstrate that Ahal had the requisite intent under the employer intentional tort exception to the exclusive remedy provision of Ohio's worker's compensation law.  We now affirm.

**I.**

On October 16, 2006, Ulrick, a journeyman union carpenter, was working in Lima, Ohio for

Ahal. Kunz, a foreman and labor supervisor who had been employed by Ahal for seven years, was

working at the same project site. Ulrick had seen Kunz around the site, but could not remember

having any previous interaction with or hearing anything negative about Kunz. That morning, Ulrick

was using a 4-5 foot metal wrecking bar weighing approximately 20-30 pounds to strip forms from

newly-set concrete. The ensuing confrontation might have been more complicated than Ulrick

suggests,[1] but on Ahal's motion for summary judgment the court accepted Ulrick's version of events:

> So at one point in time I'm picking up nails, and I was bent over. And I still had the
> wrecking bar in my hands. I sort of stood up, went to stand up, and as I stood up out
> of the corner of my eye I seen somebody coming at me, you know, towards my
> person real fast . . . .
>     But I stood up when I seen him coming at me. I didn't know what was
> coming at me or I didn't know who was coming at me. And the person that slammed
> into me, when he slammed into me he grabbed the wrecking bar. I had both hands
> on it. He wound up with both hands on it.
>     There was a struggle . . . . He was trying to struggle to take the bar from me
> very violently, jerking me . . . .
>     [I]t was Norm. Norm took the bar. He raised it up in the air, and he swung
> the bar and hit me in the leg with it, right above my knee on my right leg.

 (R. 62 (Ulrick Dep.) 56-60.) Ahal terminated Kunz on October 17, 2006, the day after the incident.

Kunz had previously been involved in three confrontations with other workers. On June 13,

2005, Kunz struck one of his co-workers on the hand after that worker refused Kunz's order to attend

a safety meeting and pointed his finger at Kunz. Ahal's employer issued Ahal a written safety

---

[1]Apparently, there was disagreement at the job site over whether stripping forms was the sort
of work that belonged to the carpenters or to the laborers. Kunz claims that he believed Ulrick was
using the wrecking bar incorrectly and that Ulrick got hurt as they wrestled for the bar after Ulrick
ignored Kunz's order to stop and strip the forms in a different manner.

violation and terminated Kunz's employment at the site, and Ahal gave Kunz a verbal warning. On February 16, 2006, Kunz argued with Ronald Stewart, who refused to follow Kunz's instructions. Kunz, believing that Stewart was going to poke Kunz with his finger, slapped Stewart's hand away, causing a compensable injury.[2] Ahal issued a safety violation report ordering Kunz never to "touch an employee in any form in an aggressive or unwelcome manner" and to fire rather than argue with poor workers. "If a like or similar incident ever happens again," Ahal's Safety Director wrote, "you will be terminated." (R. 72 Attach. 11.) On September 1, 2006, Kunz had a verbal argument with Larry Sholaw, and thereafter fired Sholaw for becoming confrontational.

The Ulricks filed their initial complaint in October 2007. On January 26, 2009, the district court granted Ahal's motion for summary judgment. This appeal followed in March of 2009.

**II.**

Ohio's worker compensation laws establish an exclusive remedy for employees injured on the job, and so generally prevent employees from suing employers to recover for injury. *See* R.C. § 4123.74. The Ohio Supreme Court has carved out from this exclusive remedy a common-law exception for intentional employer torts, *see, e.g.*, *Blankenship v. Cincinnati Milacron Chemicals,*

---

[2]The extent of Stewart's injury is not clear. Liberty Mutual generated a claim summary stating that Stewart "sustained a compensable injury to the right elbow after being struck by a supervisor." (R. 72, Ex. 3-g.) Ahal's OSHA log for 2006 notes that Stewart suffered a "sprain" to the right arm. (R. 72, Ex. 3-d.) According to Dennis Ahal, Ahal's Chairman and CEO, as a result of this injury Stewart was put on light duty for 150 days. (R. 56, Ex. 2, 71-72; R. 72, Ex. 3-d.)

*Inc.,* 433 N.E.2d 572 (Ohio 1982), and has created the three-part "*Fyffe* test" for determining when

an employer "intends" to cause injury, *see Fyffe v. Jeno's, Inc.*, 570 N.E.2d 1108 (Ohio 1991).[3]

> In order to establish "intent" for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; *(2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty*; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

*Fyffe*, 570 N.E.2d at 1112 (emphasis added); *see also Talik v. Fed. Marine Terminals, Inc.,* 885

N.E.2d 204, 207-09 (Ohio 2008) (describing the evolution of the *Fyffe* test and the common-law

carve-out for employer intentional tort). "Substantial certainty" under the second *Fyffe* prong

requires "proof beyond that required to prove negligence and beyond that to prove recklessness."

---

[3]Over the past twenty years, the Ohio legislature has thrice attempted to modify this common-law exception to the exclusive remedy (and explicitly supersede the Ohio Supreme Court's decisions in a number of cases) by heightening the already extremely high plaintiff's burden with respect to "substantial certainty." Twice, the Ohio Supreme Court has found that these attempts violated the state constitution. *See Brady v. Safety-Kleen Corp.,*576 N.E.2d 722 (Ohio 1991); *Johnson v. BP Chems., Inc.,* 707 N.E.2d 1107 (Ohio 1999). The Ohio legislature's third attempt, embodied in a statute which became effective April 7, 2005*, see* R.C. § 2745.01, has thus far been found unconstitutional by Ohio appellate courts in the 7th, 8th, and 11th Districts. *See Fleming v. AAS Serv., Inc.*, 896 N.E.2d 175, 184 (Ohio Ct. App. 2008); *Barry v. A.E. Steel Erectors, Inc.,* No. 90436, 2008 WL 2835245 (Ohio Ct. App. July 24, 2008); *Kaminski v. Metal & Wire Prods. Co.*, 175 Ohio App. 3d 227 (Ohio Ct. App. 2008). The Ohio Supreme Court has granted review in *Fleming* and *Kaminski* but has not yet announced its rulings. We therefore follow the example of an Ohio appellate court and analyze this claim under both the *Fyffe* standard and the higher § 2745.01 standard–and conclude that the Ulricks meet neither. *See Shanklin v. McDonald's USA, LLC,* 2009 WL 154034 (Ohio Ct. App. Jan. 20, 2009). While many of the cases laying out and describing the *Fyffe* standard have thus been technically superseded by O.R.C. § 2745.01, in our discussion of the application of *Fyffe* we have cited those cases without so indicating.

*Id*. at 1110. Plaintiffs must demonstrate that the employer "(1) specifically desired to injure the employee; or (2) knew that injury to an employee was certain or substantially certain to result from the employer's act and, despite this knowledge, still proceeded." *Jandro v. Ohio Edison Co.*, 167 F.3d 309, 313 (6th Cir. 1999) (quoting *Mitchell v. Lawson Milk Co.*, 532 N.E.2d 753, 756 (Ohio 1988)). "Even where a plaintiff establishes that his employer had knowledge of a dangerous condition, it does not necessarily follow that the employer knew that injury to its employee was certain, or substantially certain, to result." *Singleton v. Ohio Concrete Resurfacing, Inc.,* 2007 WL 1219323, at *8 (Ohio Ct. App. 2007) (citing *Mitchell*, 532 N.E.2d at 755-56). As courts have observed repeatedly, the Ohio substantial certainty test represents a very high bar for plaintiffs.

The Ulricks argue that, in finding that Ahal was entitled to summary judgment because they had failed to demonstrate that Ahal was substantially certain that Kunz would cause another injury, the district court applied the summary judgment standard in an overly harsh manner. When an employer moves for summary judgment on an employer intentional-tort claim, however, the employee "bears the burden of demonstrating that the employer had knowledge amounting to substantial certainty that an injury would occur." *Singleton*, 2007 WL 1219323, at *6 (citing *Pariseau v. Wedge Prods., Inc.,* 522 N.E.2d 511, 514 (Ohio 1988)); *see also Van Fossen v. Babcock & Wilcox Co.,* 522 N.E.2d 489, 492 (Ohio 1988). As the Supreme Court noted in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), summary judgment must be entered against the non-moving party which "fails to make a showing sufficient to establish the existence of an element essential to that party's cause, and on which that party will bear the burden of proof at trial." If even the Ulricks's

best facts *cannot* demonstrate that Ahal knew Ulrick's injury was substantially certain, then there is no genuine issue as to whether Ahal committed an intentional tort.

The Ulricks have clearly failed to meet this burden under R.C. § 2745.01. That statute provides that in an action for intentional tort, an employee must prove that "the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur." R.C. § 2745.01(A). An employer believes an injury is "substantially certain" when the employer "acts with *deliberate intent* to cause an employee to suffer an injury." R.C. § 2745.01(B) (emphasis added). The Ohio Supreme Court has stated in dicta that this statute "rejects the notion that acting with a belief that injury is substantially certain to occur is analogous to wanton misconduct." *Talik*, 885 N.E.2d at 208-09. The Ulricks do not even attempt to demonstrate that Ahal deliberately intended for Kunz to harm Ulrick; instead, they argue that Ahal knew that Kunz *could* cause injury. Their approach is clearly insufficient to meet the statutory standard.

The Ulricks similarly fail to clear the lower (but still "daunting," *Zink v. Owens-Corning Fiberglas Corp.*, 584 N.E.2d 1303, 1308 (Ohio Ct. App. 1989)) intent hurdle set forth in *Fyffe*, 570 N.E.2d at 1112. As this case was decided on summary judgment, we examine *de novo* the question of whether the trial court was correct in finding that the Ulricks presented insufficient evidence to satisfy the second *Fyffe* prong. *See, e.g., Switka v. City of Youngstown*, 2006 WL 2574086, at *2 (Ohio Ct. App. Sept. 1, 2006). The Ulricks have demonstrated that: (1) in the year and a half before the attack on Ulrick, Kunz had been involved in two physical altercations with employees he was supervising; (2) both physical altercations arose out of situations in which Kunz ordered an employee to do a task, the employee refused, and Kunz struck the employee's hand or arm after believing that

- 6 -

the employee was pointing or poking at him; (3) following the second physical altercation, Ahal warned Kunz in strong terms that Kunz must not in the future touch employees, that he would be automatically terminated if he did so, and that he should fire poor employees rather than argue with them; and (4) following this warning, Kunz got into a verbal argument with Larry Sholaw, and–rather than touching Sholaw–fired Sholaw instead. The Ulricks, then, have demonstrated that at the time of Kunz's attack on Ulrick, Ahal knew that Kunz had been involved in physical confrontations in the past but had not been involved in such confrontations since receiving a stern warning and ultimatum. This evidence, even if it could demonstrate that Ahal was negligent or reckless, simply cannot demonstrate that Ahal was *substantially certain* that Kunz would physically attack *any* other employee in any manner–much less use a 20-30 pound wrecking bar to assault a man he was not supervising and with whom he had never so much as spoken.

There are, admittedly, potential problems with courts extending *Fyffe* to injuries caused by other employees rather than by physical conditions in the workplace. As the Ohio Supreme Court noted in exasperation in a workplace sexual harassment case, it is "glaringly obvious" that human-caused torts were "not under consideration when the test was formulated." *Kerans v. Porter Paint Co.*, 575 N.E.2d 428, 435 (Ohio 1991) (refusing to extend the common law employer intentional tort test to claims of sexual harassment). Focusing on the common-law requirement that an employer be substantially certain that an employee would be injured by a "process, procedure, instrumentality or condition," the *Kerans* court observed that "[t]here is no reference in this language to a human being and this court believes that even the most abstract thinkers would have to stretch their imaginations to new limits to conceive of [the agent of harassment] as a 'process, procedure, or

instrumentality.'" *Id.* Outside of the sexual harassment context, however, numerous courts have in

recent years used the *Fyffe* test in cases of employee-caused injury.[4] The courts in all but two of

these cases (*Thacker* and *Woodell*) affirmed grants of summary judgment on the grounds that the

employers lacked substantial certainty that an employee's actions would cause injury to another. (In

both *Thacker* and *Woodell*, the courts concluded that there were material issues of fact as to whether

the employers knew that other employees represented a danger to other employees, and so denied

motions by the defendant-employers for summary judgment. *See Thacker*, 2007 WL 2780561;

*Woodell,* 2005 WL 2033285.) More importantly, there are no cases in which courts *refused* to

extend the *Fyffe* test to employee-on-employee violence. At least one Ohio appellate court has

"specifically reject[ed]" an employee's argument that "where an employee is assaulted in the work

place by a fellow employee such conduct provides a cause of action separate and apart from a

workers' compensation claim and an intentional tort claim." *Jasinski*, 1992 WL 14419, at *2 ("We

are unwilling to adopt such a position. Thus, we will proceed with an intentional tort analysis.").

Put another way: while the *Fyffe* test was not originally intended to apply to human interaction, Ohio

---

[4]Even a quick survey suggests that courts regularly and without question apply *Fyffe* to cases of employee-caused injury. *See, e.g.*, *Weimerskirch v. Coakley*, 2008 WL 928396 (Ohio Ct. App. Apr. 8, 2008); *Thacker v. DaimlerChrysler Corp.*, 2007 WL 2780561 (N.D. Ohio Sept. 24, 2007); *Singleton,* 2007 WL 1219323; *Medlen v. Estate of Meyers*, 476 F. Supp. 2d 797 (N.D. Ohio 2007) *rev'd on jurisdictional grounds*, 273 F. App'x 464 (6th Cir. 2008); *Switka*, 2006 WL 2574086, at *6; *Hinton v. YMCA of Cent. Stark Cty.*, 2006 WL 1746111, at *1 (Ohio Ct. App. June 26, 2006); *Woodell v. Ormet Primary Aluminum Corp.,* 2005 WL 2033285, at *6 (Ohio Ct. App. Aug. 19, 2005); *Johnson v. Ohio Dept. of Rehab. and Corr.*, 2003 WL 22006860 (Ohio Ct. App. Aug. 26, 2003); *Taylor v. Orlando Baking Co.*, 2003 WL 22724710 (Ohio Ct. App. Nov. 20, 2003); *Bosse v. Rare Hospitality*, 2002 WL 1724053 (Ohio Ct. App. July 26, 2002); *Reed v. Armco, Inc.*, 2000 WL 1884830 (Ohio Ct. App. Dec. 20, 2000)*; Jasinski v. Ford Motor Co.*, 1992 WL 14419 (Ohio Ct. App. Jan. 30, 1992).

courts have routinely extended the test in cases of employee violence, and have routinely found that plaintiffs have failed to demonstrate that the employers had substantial certainty that another employee would cause an injury.

One effective way to adjust the *Fyffe* test to accommodate human-caused injury is to consider what measures employers took to ensure, insofar as possible, that an employee would not cause injury in the future. This "highly fact-intensive inquiry" approach was suggested by the *Thacker* court, 2007 WL 2780561, at *4 (citing *Kerans*, 575 N.E.2d at 435), which noted:

> When applying the *Fyffe* standard to a case of workplace violence by an employee, courts must consider that an employer may not program and isolate a human as it can a machine . . . . The standard applied by a court should contemplate that employers cannot treat humans exactly as they treat machines, and so the care required by employers with regard to a human is not exactly the kind or type of care required with regard to a machine or spill or structure. A court must be cognizant of the additional risks and dangers a human can pose because humans possess volition and potential instability in a way that no other workplace hazard can. The least an employer can do is be vigilant and cognizant of warning signs that employees display, and treat them sensitively and effectively as they arise.

*Id.* In *Thacker*, the court observed that the employer, who arguably had notice that an employee who later shot several of his supervisors was abusing drugs and threatening co-workers, kept the employee "untreated, on the job, and working with the same people to whom he displayed animosity." *Id.* In this case, in contrast, Ahal took action, issuing a verbal warning after the first physical altercation and then issuing a written warning and ultimatum after the second physical altercation. Ahal's disciplinary action was clearly targeted at preventing Kunz from causing future injury by putting Kunz on notice that his behavior was unacceptable; Ahal, which had a generally positive long-term relationship with Kunz, had reason to believe that its ultimatum would suffice to

prevent Kunz from injuring anyone, and could not have been substantially certain that Kunz would instead turn on Ulrick with a wrecking bar.

### III.

The Ulricks have not presented sufficient evidence to support a reasonable jury finding, under either R.C. § 2745.01 or the common-law *Fyffe* test, that Ahal was substantially certain that physical injury would result from continuing to employ Kunz–and in fact have produced evidence suggesting that Ahal believed it had resolved the problem of Kunz physically confronting employees. We therefore affirm the district court's decision to grant Ahal's motion for summary judgment.